A00A2226, A00A2227. CLINCH COUNTY BOARD OF
EDUCATION v. HINSON; and vice versa.
(543 SE2d 91)

PHIPPS, Judge.
David Hinson was employed by the Clinch County Board of Education as Media and Technology Coordinator. At the request of school administrators, Hinson placed a videocamera in a girls' locker room during high school basketball games in an attempt to apprehend a thief. Although no thefts occurred, videotapes captured images of female students changing their clothing and recorded their conversations. Following disclosure of the tapes' existence, the county school superintendent suspended Hinson and recommended that his contract of employment be terminated. A hearing requested by Hinson under the Fair Dismissal Act was conducted by a tribunal composed of active and retired school administrators from various Georgia counties.[1] Based on its findings of fact, the tribunal recommended that Hinson's contract of employment be terminated. The county board of education approved the tribunal's findings and recommendation, as did the state board acting in its appellate capacity. On further appeal, however, the superior court reversed.

In Case No. A00A2226, the county board of education appeals. The board charges the superior court with error in failing to give deference to the local board's decision under the applicable standard of appellate review. In Case No. A00A2227, Hinson cross-appeals. He contends that the local board's decision should have been reversed for reasons not given by the superior court in its order. Finding merit in the appeal but not the cross-appeal, we hold that the superior court erred in reversing the board's termination of Hinson's employment.

Hinson was employed by the Clinch County Board of Education for a number of years. He was a system-wide media and technology

---

[9] *Muhammad v. State*, 242 Ga. App. 540, 542 (2) (529 SE2d 418) (2000).
[1] See OCGA § 20-2-940 (e) (1).

coordinator. He was regarded as a very effective administrator, and his evaluations were uniformly excellent.

During a girls' basketball game at Clinch County High School, a thief gained entrance to the locker room used by the visiting team and stole money and jewelry worth almost $2,000. The suspected point of entry was near the locker room entrance. The theft was discussed in a meeting between School Resource Officer Lonnie Webb (a Clinch County deputy sheriff), high school principal Dr. Kay Hinson (Hinson's wife), and assistant principal Donald Tyson. At the meeting, Webb suggested that an attempt be made to apprehend the thief by placing a videocamera in the visiting girls' locker room during a basketball game. Webb advised Dr. Hinson that this would be legal so long as the camera was aimed at the locker room entrance.

Hinson was asked to meet with Dr. Hinson, Tyson, and Webb and, at the meeting, was informed of Webb's plan. Hinson was given no legal advice, but was told that the videocamera should be focused on the locker room entrance and asked if this was feasible. After Hinson, Tyson, and Webb went to the locker room and determined that a videocamera could be positioned in a locker so as to focus on the entranceway, a decision was made to proceed with the plan. Although Hinson characterized the decision as a "collective" one, Dr. Hinson acknowledged that the final decision-making authority was hers.

One afternoon, Hinson and Webb installed Hinson's personal videocamera inside a wire-mesh locker in the visiting locker room and caused it to record activities in the locker room before, during, and after a girls' basketball game. Hinson repeated this procedure during another girls' basketball game two weeks later. Altogether four two-hour tapes were made, two on each date. The camera was focused so as to record benches and lockers used by players and cheerleaders, as well as the locker room entrance. The videotapes showed some of the female students removing their outer garments and dressing for the game. Some students were captured by the camera in underclothing. The camera was visible to some but not all of the students. During the latter game, a cheerleader for the visiting team unplugged the camera, but Hinson reconnected it before recording the final tape. None of the female students had any prior knowledge of the videotaping or gave their prior consent.

On direct examination, Hinson testified that he meant to aim the camera at the entrance to the locker room and did not intend to record any images of female students using the lockers. But during cross-examination, he testified that he knew female students would be undressing in the locker room and intended to capture them on videotape because he was unsure whether one of them might have been the thief.

Without erasing the tapes, Hinson put them in a storage room

adjacent to his office to which a limited number of school personnel had access. The tapes thereby became available to be used by teachers for retaping. A student found one of the tapes in a teacher conference room, viewed it, and disclosed the contents to his mother. The school superintendent later obtained the tape. Upon reviewing the tape, the local board of education turned the matter over for criminal investigation. After the remaining tapes were found by a Georgia Bureau of Investigation investigator in Hinson's office and in the adjacent storage room about two years after the recordings were made, Hinson was indicted by a grand jury on felony eavesdropping charges. Although a subsequent grand jury dismissed the charges, the cheerleader who had unplugged the camera filed suit against the school board and others because of the taping. When Webb's involvement in the videotaping was disclosed, he was dismissed.

Hinson's claim that he did not know that the students would be dressing in the area where the camera was focused was found by the tribunal to be lacking in credibility. In this regard, the members of the tribunal noted that they had visited the locker room with the consent of the parties and observed that a videocamera located where Hinson placed it surely would record the benches intended for use by students dressing. The tribunal and later the local board concluded that the acts and omissions of Hinson in causing or participating in causing the videotapes to be made, retaining the videotapes, and failing to ensure that they were erased, destroyed, or otherwise safeguarded constituted "incompetency" under OCGA § 20-2-940 (a) (1) and "other good and sufficient cause" justifying termination of his employment under OCGA § 20-2-940 (a) (8). The state board noted these findings and determined there was evidence supporting the local board's decision.

The superior court concluded otherwise and reversed. The court ruled that in videotaping the girls' locker room Hinson had merely carried out a task assigned to him by school administrators; that there was no evidence of any policy, directive, or training that would have required Hinson to erase the tapes; and that the evidence was insufficient to support a finding that he was custodian of the tapes. Relying on an out-of-state case, the court also held that Hinson could not be dismissed for unfitness or incompetence absent evidence showing that his conduct produced disruption or impairment of discipline or of the teaching process and that his retention posed a significant danger of harm to either students, school employees, or others who might be affected by his actions. The court found no such evidence. The court also determined that the local board of education had abused its discretion by arbitrarily and capriciously singling out Hinson for dismissal without disciplining any other tenured employee of the board.

1. Sitting as an appellate body, the superior court is bound to affirm the decision of the local board if there is any evidence to support it.[2] In matters such as this, the superior court should not interfere with a local board's administration of its schools unless the board has grossly abused its discretion or acted arbitrarily or contrary to law.[3]

(a) In ruling that Hinson was merely performing an assignment given him by school administrators, the court ignored evidence that he had violated one of their instructions by focusing the videocamera at dressing areas as well as at the locker room entranceway.

(b) Although in his position as media and technology coordinator Hinson was not generally responsible for storage and security of videotapes, he made the decision as to what to do with these videotapes after recording them. Some of the videotapes were found in his office approximately two years after they were made. This constitutes evidence that he was their custodian.

(c) The fact that Hinson's decisions concerning retention and storage of the videotapes did not violate any policy or directive does not preclude his dismissal. The school could hardly be expected to have a preestablished policy concerning disposition of videotapes depicting female students undressing in high school locker rooms.

(d) The superior court erred in holding that Hinson could not be dismissed for incompetence unless the evidence showed that his actions disrupted or impaired discipline or teaching or that he posed a significant danger to others. *Oakland Unified School Dist. v. Olicker*,[4] the out-of-state case cited by the court in support of this, is of course not binding in Georgia. While the *Olicker* factors are certainly relevant in determining whether actions by a teacher support a charge of incompetence, they are not absolute prerequisites to a finding of incompetence under Georgia law. Moreover, the factors identified in *Olicker* apply to teachers, and the responsibilities for the position occupied by Hinson show that he was an administrator.

Even if the evidence was insufficient to establish Hinson's incompetence, given his otherwise exemplary career record, the local board did not abuse its discretion in finding the existence of "other good and sufficient cause" for his termination. As recognized by the state board, the tribunal and local board dismissed Hinson for both incompetence and other good and sufficient cause. The state board affirmed the local board's decision.

---

[2] *Ransum v. Chattooga County Bd. of Ed.*, 144 Ga. App. 783, 785 (5) (242 SE2d 374) (1978).

[3] See *D. B. v. Clarke County Bd. of Ed.*, 220 Ga. App. 330, 333 (1) (469 SE2d 438) (1996); *Terry v. Houston County Bd. of Ed.*, 178 Ga. App. 296, 297 (342 SE2d 774) (1986).

[4] 102 Cal. Rptr. 421, 428-429 (25 Cal. App. 3d 1098) (1972).

(e) Under the evidence, it cannot be said that the local board singled out Hinson for greater discipline than others similarly situated. The evidence shows that Hinson and Webb were solely responsible for the positioning of the videocamera so as to capture the images of female students undressing in the locker room. Evidence was presented showing that tenured employees other than Hinson who were aware of the taping assumed that the videocamera would not be positioned in such manner. Both Hinson and Webb were dismissed from their employment.

2. The issues presented in the cross-appeal either have been resolved in Division 1, are moot, or have not been preserved for review in this court because they were not raised in superior court.[5] The superior court did not err in failing to reverse the board's decision based on the grounds asserted in the cross-appeal.

*Judgment affirmed in Case No. A00A2227. Judgment reversed in Case No. A00A2226. Johnson, C. J., and Ellington, J., concur. Smith, P. J., not participating.*

DECIDED NOVEMBER 28, 2000 — ■

*Helms & Helms, Jack J. Helms, Jr.,* for appellant.
*Barham, Dover, Bennett, Miller & Sherwood, Douglas L. Mutert, Berrien L. Sutton,* for appellee.
*Harben & Hartley, Sam S. Harben, Jr., Daniel R. Murphy,* amici curiae.

---

[5] See *Young v. Scott,* 212 Ga. App. 572, 574 (1) (442 SE2d 768) (1994). Although Hinson incorporated the statement of facts in his state board brief into his superior court brief, the only issues raised before the superior court were whether the local board's decision was arbitrary and whether there was evidence to support its findings and conclusions.