Argued and submitted January 9, affirmed May 31, 2006

Donald BELLAIRS,
*Petitioner,*

*v.*

BEAVERTON SCHOOL DISTRICT
and Fair Dismissal Appeals Board,
*Respondents.*

FDA-04-01; A125893

136 P3d 93

Thomas K. Doyle argued the cause for petitioner. With him on the briefs was Bennett, Hartman, Morris & Kaplan, LLP.

Nancy J. Hungerford argued the cause for respondent Beaverton School District. With her on the brief were Jennifer L. Hungerford and The Hungerford Law Firm.

Richard D. Wasserman, Attorney-in-Charge, Civil/Administrative Appeals Unit, waived appearance for respondent Fair Dismissal Appeals Board.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

The Beaverton School District (district) dismissed petitioner, a full-time contract teacher, on the statutory grounds of insubordination and neglect of duty.[1] Petitioner appealed to the Fair Dismissal Appeals Board (FDAB). After a hearing, FDAB found that the facts on which the district relied were true, that those facts constituted insubordination and neglect of duty, and that dismissal was an appropriate sanction. Petitioner now seeks judicial review, arguing that FDAB made several findings unsupported by substantial evidence and that the remaining facts were insufficient to support the legal grounds on which the dismissal was based.[2] We affirm.

## I. FACTUAL BACKGROUND

Petitioner taught media studies, creative writing, and English for the district from 1997 until his termination in 2004, first at Meadow Park Middle School and then at Westview High School. Petitioner's termination was triggered by two events that took place while he was employed at Westview in January 2004, each of which, according to the district superintendent, demonstrated and confirmed a continuing pattern of insubordination and neglect of duty: petitioner's failure to consult an administrator before making a comment about a student at a January 14, 2004, meeting and his failure to turn in term grades. In order to provide the necessary context for the district's decision, we summarize the findings of the district and FDAB, which span more than four years of petitioner's employment, and then turn to the specific incidents that served as the immediate occasion for his dismissal. Apart from the few exceptions that we indicate, FDAB's findings that provide the basis for this overview are

---

[1] ORS 342.865(1) provides, in part:

"No contract teacher shall be dismissed or the teacher's contract nonextended except for:

"* * * * *

"(c) Insubordination; [or]

"(d) Neglect of duty, including duties specified by written rule[.]"

[2] Petitioner does not argue that, if the findings and legal conclusions are correct, dismissal was nonetheless an unlawful sanction.

unchallenged. *See Jefferson County School Dist. No. 509-J v. FDAB*, 311 Or 389, 393 n 7, 812 P2d 1384 (1991) (unchallenged findings of fact are settled for purposes of review).

A. *Record of misconduct prior to 2004*

Between 1999 and 2004, petitioner was the subject of numerous complaints from students and colleagues. While he was at Meadow Park, several student complaints, including those of K, a student whom he would later teach at Westview, led petitioner to acknowledge that he had been angry with students and that he required a break from teaching. K's parents and the district agreed to have K removed from petitioner's class. In another episode, a student complaint about petitioner's use of derogatory language led petitioner to insult a guidance counselor and to deliver an inflammatory letter to the student's father. Warned by the superintendent that his conduct created a "severe" situation, petitioner was transferred to Westview.

At Westview, petitioner violated school policy by allowing students to enter grades and attendance into his computer, a practice that compromised the system's confidentiality. His outbursts in faculty meetings and his interaction with students impaired his professional relationships and caused the administration to decline his reappointment as student activities director. On one occasion, petitioner angrily and loudly berated a computer technician in front of a vice-principal and other staff, calling him a "peon" and adding derisive comments about classified employees in general. Thereafter, the principal met with petitioner, directed him to refrain from such outbursts and to treat all staff with respect, and placed a summary of the conference in petitioner's working file.

In another instance, petitioner initiated a protracted dispute by berating a student who did not return video equipment on time. He threatened to give the student a failing grade, and, after administrators advised him that his conduct was unprofessional, he thwarted the school's attempts to repair his relationship with the student and the student's father. Ultimately, after the student had apologized to him at a meeting, petitioner responded by berating him again, this time in front of administrators, reducing the student to tears.

As a result, petitioner received a written directive to treat staff and students respectfully in accordance with district and school expectations. Petitioner failed to attend meetings with the principal to discuss the incident.

Because his relationship with the vice-principal who had supervised him had deteriorated over the course of the dispute, a different vice-principal, Chamberlain, was assigned to supervise him. Shortly thereafter, Chamberlain discovered that petitioner again was using students to enter attendance data into his computer and instructed petitioner to stop. Petitioner responded with a disrespectful e-mail message, stating, in part, "I have not been pleased with much administrative guidance in the past. It has often seemed uninformed."

Chamberlain later received complaints from a parent about petitioner's use of inappropriate language at a Westview women's football practice, which petitioner supervised. Petitioner warned the students, including K (whose parents previously had complained about petitioner at Meadow Park), not to run home to complain to their "mommies" about his improper language, as they had done in middle school. Chamberlain warned petitioner not to contact the parents concerning the episode, and petitioner responded with an e-mail to Chamberlain complaining of an "unappreciative administration" that "cav[ed] in to self-interested parents * * *." Petitioner refused to refrain from sending disrespectful e-mails, vowing instead to "speak out" and "say things as they are."

Chamberlain recorded those events in a letter directing petitioner to communicate in a respectful manner with staff and students and to comply with teacher standards relating to respectful interactions and communications. Chamberlain directed petitioner to see his immediate supervisor before speaking out in the event of a potential conflict with students or staff and to contact him with any such concerns to ensure that petitioner's communications with others would be appropriate. Chamberlain wrote, "Your behavior and actions must come into immediate compliance with these

expectations. This directive is very serious. Any future failure to meet these expectations will carry consequences that will lead to disciplinary action that may lead to dismissal."

B. *Conduct triggering dismissal*

1. *January 14, 2004, meeting*

On January 14, 2004, after a general faculty meeting, petitioner attended a smaller meeting with, among others, Superintendent Colonna and Assistant Superintendent Greene. Those in attendance were encouraged to be open and frank with their concerns about the school district. At one point during the conversation, petitioner displayed the student newspaper and pointed to a picture of a student who had been selected for a lead role in a Westview drama production. The student was K, whose parents had removed her from petitioner's class at Meadow Park and whose mother complained about petitioner's interactions with the Westview women's football team. Apparently as an attempt to demonstrate the extent to which some families received favorable treatment from the district, petitioner stated, "And who knows, she may have deserved the part," or something of similar import, suggesting that the student might have won the lead because her parents had resources to support the school. He made the remark in view of all who were present at the meeting; the discussions at the meeting were not confidential.

2. *Failure to turn in grades*

Later that same month, all teachers at Westview received notification that term grades would be due by 9:00 a.m. on January 27. The deadline ensured timely grade processing for seniors who had applied to college and for student athletes whose future participation depended on maintaining a prescribed level of academic standing. All teachers were relieved from classes on Monday, January 26, so that they could complete their grading on time. Chamberlain requested a meeting with petitioner at the end of the workday on January 26; petitioner agreed, adding that the timing would give him the chance to finish his grading that day.

At the meeting, Chamberlain gave petitioner a "Memo of Understanding" that placed petitioner on paid

administrative leave until a subsequent meeting scheduled for January 28. The memo instructed petitioner to "refrain from discussing this leave or any other topics with any Beaverton School District Personnel, students or parents," and advised that he could discuss those issues instead with his union representative. Petitioner was also required to refrain from using district-provided e-mail and to stay off district property. Petitioner did not inform Chamberlain that he had not yet turned in his grades, due by 9:00 a.m. the next morning, nor did he make arrangements to have them turned in by another person, for example, his union representative.

When, the next morning, petitioner's grades were still not turned in, school officials became concerned about the consequences for petitioner's students. The district contacted him, and petitioner promised to bring the papers to the second meeting, which had been rescheduled for January 29. However, petitioner did not deliver his term grades at that meeting; rather, he brought an ungraded pile of student papers. His excuse, which FDAB explicitly did not believe, was that he did not grade the papers because he could not enter school property to retrieve his answer key. Chamberlain testified that the tests contained essay questions, rather than, for example, multiple choice questions with scannable answers, for which an answer key might have been useful.

3. *Petitioner is dismissed*

At the January 29 meeting, petitioner received another Memo of Understanding. It continued his administrative leave and reiterated the directives in the first memo. On February 3, Superintendent Colonna sent petitioner a seven-page letter recommending his dismissal for neglect of duty and insubordination, informed by a detailed and chronologically itemized discussion of various negative interactions with staff, students, and administrators, including those we have described above and others. The dismissal became effective on February 23, 2004.

## II. FDAB DECISION

Petitioner appealed the dismissal to FDAB. Under ORS 342.905(6), FDAB must determine:

"whether the facts relied upon to support the statutory grounds cited for dismissal * * * are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards * * * are adequate to justify the statutory grounds cited. * * * The panel shall not reverse the dismissal or nonextension if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal or nonextension was unreasonable, arbitrary or clearly an excessive remedy."

After a formal hearing, FDAB found that "virtually all" of the factual matters that Colonna alleged were proved.[3] It concluded that the January 14 incident and the failure to submit grades, "when considered as a continuation of the pattern demonstrated by the earlier incidents * * * are adequate to support the statutory grounds of insubordination and neglect of duty as those terms are defined in FDAB case law."

In its discussion of neglect of duty, FDAB cited the general duty of educators " 'to maintain effective relationships with students, parents, and other teachers and staff[,] and a teacher's duty effectively to teach and model approved district curriculum and policy,' " quoting *Jefferson County School Dist. No. 509-J*, 311 Or at 390. It emphasized that Westview "places a high value on respectful and professional communication," and explained that "[t]he duties immediately at issue are those related to respectful and professional communication, as well as the duty to follow the school's rules with regard to submission of grades."

FDAB explained that petitioner neglected the duty to communicate respectfully when he intimated that a student who had complained about him three times did not deserve her role in the school play. FDAB further explained

---

[3] Superintendent Colonna's letter also states that petitioner violated the district's sexual harassment policy. It is unclear from the letter whether that violation was another instance of "neglect of duty" or served as a third reason for petitioner's termination. In any event, FDAB on review determined that petitioner did not violate the sexual harassment policy and the district does not cross-assign error to that finding. We therefore do not consider it in our disposition of this case.

that the breach of duty on that occasion was one in a long line of disrespectful communications, explicitly rejecting petitioner's attempts to characterize some of those interactions as civil.

FDAB also determined that petitioner neglected his duty to turn in student grades, despite having explicit notice of the due date and adequate time on January 26 to complete the task. FDAB rejected petitioner's claims that he did not finish his grading because he was distraught about the administrative action and that he could not access a grading key on campus due to the leave conditions. Further, it found that, even after the deadline passed, the district arranged to accept petitioner's grades from his lawyer, but petitioner instead delivered ungraded papers and, as a result, impaired the district's effort to tally cumulative student grades for the term.

Using many of the same findings of fact that supported its determination regarding neglect of duty, FDAB also concluded that petitioner had engaged in numerous instances of insubordination, defined as "disobedience of a direct order or an unwillingness to submit to authority" done with a "defiant intent." It concluded that petitioner demonstrated "a continuing pattern of resistance to the District's authority and refusal to maintain harmonious relations with students, parents, staff and other teachers." FDAB explicitly incorporated into the insubordination analysis the findings used to substantiate neglect of his duty to communicate respectfully, including the findings that petitioner "made it clear that he intended to" disregard directives to communicate respectfully when he vowed to "speak out" and "say things as they are," and it reiterated that, by insinuating at the January 14 meeting that K might not have earned her role in the school play, petitioner refused to submit to the district's order that he abandon his past conflicts with K's family. FDAB also incorporated its finding that petitioner did not submit his grades on time, that his explanations for doing so were not credible, and that he turned in ungraded papers even after receiving instructions to submit final term averages.

FDAB concluded that petitioner's "decision to continue his negative and unprofessional communications and his refusal to comply with the directive to turn in the grades on time" constituted discrete instances of insubordination, "which, considered with his past patterns of refusing to comply with the directives given to him, demonstrate a continuing pattern of insubordination sufficient to support this statutory ground for dismissal."

## III. DISCUSSION

On judicial review, petitioner assigns error to two findings of fact in FDAB's opinion and to FDAB's legal determinations that he neglected his duty and was insubordinate.

### A. *Findings of Fact*

■ We first address the challenged factual findings. Petitioner asserts that FDAB erred in finding that, "[o]n January 27, 2004, the District discovered [petitioner] had not turned in his grades [and] contacted [petitioner], who said he would bring the grades to the meeting scheduled for the morning of January 29, 2004." Petitioner also contends that FDAB erred in finding that petitioner "brought the examination papers to the meeting, but they were not graded."

Petitioner argues that the findings are "incomplete, misleading and in error" because they do not mention petitioner's contentions that he offered to turn in his students' exam papers on January 28, that he could not do the grading because he lacked an answer key, and that he offered to finish the grading after having brought the papers ungraded to the January 29 meeting. In other words, petitioner does not contend that he did, in fact, turn in his grades, or that he did not say that he would bring the grades to the January 29 meeting, or that he brought graded exams to that meeting. Nor does he dispute that testimony in the record supports FDAB's findings. Rather, he appears to ask this court to determine that FDAB's failure to mention his excuses renders the challenged findings erroneous, despite the existence of evidence to support them. That argument does not assist petitioner in light of our standard of review.

We cannot reject an FDAB finding of fact if it is supported by substantial evidence in the record. ORS

183.482(8)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). In deciding whether evidence is substantial, we consider all relevant evidence, whether it detracts from the finding or supports it. *Norden v. Water Resources Dept.*, 329 Or 641, 647-48, 996 P2d 958 (2000). We therefore do not reject the idea that, in some circumstances, the "truth" of a statement characterizing a particular action could be compromised by isolating the action from its surrounding circumstances and describing it out of context. That is not what occurred here. FDAB considered petitioner's explanations for his failure to turn in grades and specifically found that they were not credible. The obligation to consider unsupportive evidence is not an obligation to believe it. In sum, substantial evidence in the record supports the challenged findings.

## B. *Neglect of Duty*

■ In his second assignment of error, petitioner challenges FDAB's conclusion that the facts it found constitute "neglect of duty." FDAB's conclusion amounts to an interpretation of that statutory phrase and, for that reason, we review it for errors of law. ORS 183.482(8); *Jefferson County School Dist. No. 509-J*, 311 Or at 396.

■ FDAB has interpreted "neglect of duty" to mean the failure of a teacher to engage in conduct designed to bring about performance of his or her responsibilities. *Fisler v. Hermiston School District*, FDA 84-1, 24-26 (1985). A school district may identify the duties of its teachers in view of "broad considerations such as providing for the comprehensive education of its students, providing for the efficient operation of its schools, and maintaining favorable community/school relationships." *Jefferson County School Dist. No. 509-J*, 311 Or at 397. FDAB cited the district's own "Standard[s] for Competent Performance" for professional and communication responsibilities, which state the following duties, among others:

> "2.2 The competent professional works toward the accomplishment of school, department, team, and district goals as indicated by:

"a. accepting shared responsibilities such as supervision of students, program development, or dissemination of information.

"* * * * *

"c. following District, school, or department courses of study, guidelines, procedures, directives and instructional strategies.

"2.3 The competent staff member acts in a professional manner * * *.

"* * * * *

"3.2 The competent professional communicates effectively with colleagues and supervisors * * *."

In addition, FDAB cited the district's requirement that teachers "maintain a consistent professional behavior in working relationships with all school personnel, coworkers, parents, students and other members of the general public."

■ Petitioner does not contend that either the district or FDAB has exceeded its authority or otherwise erred in its general definition of "neglect of duty." Petitioner focuses on two other asserted errors. First, he argues that FDAB erred in assuming that "multiple minor incidents for which the teacher has already been disciplined and which do not in themselves constitute neglect of duty can cumulatively be considered neglect of duty." We disagree. Under FDAB decisions a district may consider a teacher's "past record of defaulting on * * * responsibilities" in determining whether that teacher failed in particular instances to engage in conduct designed to bring about performance of required duties. *Fisler*, FDA 84-1, at 26. FDAB's decisional rule is in harmony with this court's case law. In *Barnes v. Fair Dismissal Appeals Bd.*, 25 Or App 177, 548 P2d 988 (1976), we held that FDAB did not err in affirming a dismissal based on a series of incidents, some of which occurred more than four years before the petitioner was dismissed. FDAB, then, did not err in considering incidents that occurred before the events that ultimately triggered petitioner's dismissal in determining whether they constituted a pattern of neglect of duty.

Petitioner's second theory is that the incidents do not amount to "neglect of duty." That theory, however, is

premised on the assumption, rejected above, that the district may consider only the immediately triggering incidents. Regardless of whether those two incidents alone amount to neglect of duty, they doubtless do when seen as part of a larger pattern, and that is how FDAB considered them: "The allegations of prior misconduct are evidence showing a pattern of behavior by [petitioner] and are not the basis for new discipline." In explaining its conclusion regarding neglect of duty, FDAB stated:

"[Petitioner] repeatedly demonstrated his personal animosity towards students and parents he viewed as 'privileged,' toward staff and administrators who did not support him in the manner he desired, and towards anyone who dared to point out his faults. In doing so, he neglected his duty to communicate respectfully and professionally to students, parents, the staff and administrators.

"[Petitioner] was given warnings, directives and opportunities to improve his communication skills and to stop engaging in angry outbursts. He continued to neglect his duty, and made it clear he intended to continue neglecting his duty because he had decided to 'speak out' and 'say things like they were.' His repeated outbursts created an uncomfortable atmosphere at odds with the school's vision. * * *

"* * * * *

"[Petitioner] also did not turn in his students' grades by the deadline, in spite of the fact that he had been given specific instructions about when to turn in his grades and he, like all the teachers, had been given time in which to prepare them. * * * Moreover, even though he was being paid for the period of time he was placed on leave, he did not complete the grading. Instead, he turned in ungraded exams."

We conclude that FDAB clearly explained the logical connection between the facts that it found and the standards that it was authorized to apply. It did not err in concluding that petitioner neglected his duty.[4]

---

[4] FDAB also found that petitioner neglected his duty at the faculty meeting where he intimated that a student's influential parents, and not her talent, enabled her to win the lead in a school play. We find that the incident is more accurately characterized as insubordination, and we discuss it below. We note,

## C. *Insubordination*

 Like "neglect of duty," "insubordination" is an "inexact legislative term" that FDAB has the authority to interpret and the obligation to interpret consistently with legislative policy. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 224-26, 621 P2d 547 (1980). Here, FDAB applied its own long-held and uncontroversial interpretation of insubordination: "disobedience of a direct order or unwillingness to submit to authority," citing *Covey v. Umatilla School District*, FDA 83-9, 23 (1984), *aff'd without opinion*, 76 Or App 402, 708 P2d 1210 (1985), *rev den*, 300 Or 545 (1986). FDAB explained, consistently with its previous opinions, that "insubordination requires a defiant intent on the part of the teacher." *See Fisler*, FDA 84-1, at 25. As with neglect of duty, a district may consider a pattern of previous behavior in determining whether a specific action constitutes insubordination. *Id.* at 26.

 Petitioner first argues that insubordination requires defiance of a direct order. As noted above, however, FDAB has defined the term to include, as an alternative, *"unwillingness to submit to authority."* Petitioner does not argue that in so defining the term, FDAB erroneously interpreted a legislative directive or erred in any other way, and we independently conclude that it did not. Further, in several instances, petitioner *did* disobey a direct order—for example, the order to stop initiating arguments about K and her parents.

Petitioner further argues that FDAB's analysis lacks substantial reason because (1) its conclusion is based on findings imported from its neglect of duty analysis, and (2) the board did not find that petitioner had a defiant intent. We disagree. With respect to the first argument, we note that identical facts can support different legal conclusions, particularly when the legal conclusions are as closely related to each other as "neglect of duty" and "insubordination." *See* 206 Or App at 198-99 n 4 (2006). Thus, for example, willfully continuing to engage in aggressive and hostile communications

_____

however, that, even without that incident, ample evidence supports FDAB's conclusion. We also note that the distinction between "neglect of duty" and "insubordination" is difficult to grasp in situations where, as happened here, a teacher's supervisors impose a duty and the teacher willfully fails to perform it.

after being told to cease such conduct can constitute neglect of duty *and* insubordination. With respect to the second argument, FDAB stated that, at the January 14 faculty meeting, petitioner affirmatively "deci[ded] to continue his negative and unprofessional communications" when he made comments about K to the superintendent. FDAB found that petitioner could have voiced his policy concerns *without* referring to K, and noted that K was the same student whose complaints had aroused petitioner's anger and defiance in the past, including his vow to "speak out" and "say things like they are," despite the directives of the administration. Based on that history, FDAB concluded that petitioner's comment was an "intentional act in violation of his supervisor's directive to avoid such communications and to talk with his supervisor if he had any concerns" about potential conflicts with students, or, in other words, an unwillingness to submit to authority with a defiant intent.[5]

Regarding nondelivery of grades, FDAB concluded, based on the testimony of several district witnesses, that petitioner affirmatively "refus[ed]" to turn in his completed grades after having received ample time to do so (part of which was on paid administrative leave) and after delivery arrangements had been made. That affirmative refusal was readily attributable to a defiant intent, based on petitioner's own long history of disrespectful behavior toward the district. *See City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981) (inference made by reviewing agency withstands appellate review when fact on which it is based is supported by substantial evidence and basis in reason connects inference to fact from which it is derived). In sum, FDAB's order applied appropriate legal principles and is supported by substantial reason.

Affirmed.

---

[5] A footnote in petitioner's brief states that the district may not punish him on the basis of his conduct at the faculty meeting because he was engaging in speech about a matter of public concern and was therefore protected by Article I, section 8, of the Oregon Constitution. Petitioner cites no cases and presents no argument in support of that theory, and we therefore do not address it.