A06A2133. BRAWNER v. MARIETTA CITY BOARD OF EDUCATION.
(646 SE2d 89)

BARNES, Chief Judge.

Dr. Sharon Brawner, a City of Marietta elementary school teacher, was terminated after she attended a pre-planning day at her school while she was on extended long-term disability leave because of treatment and complications from cancer. The Marietta City Board of Education (hereinafter "the Local Board") terminated Brawner's teaching contract on the grounds of insubordination and other "good and sufficient cause." The State Board of Education affirmed the Local Board, and upon Brawner's appeal, the superior court, finding

evidence of insubordination, upheld the termination. She filed an application for discretionary review of the trial court's order, which we granted.

On appeal, Brawner argues that there was no evidence supporting the Local Board's finding that she was insubordinate pursuant to OCGA § 20-2-940 (a) (2) by attending a pre-planning meeting while on an approved leave of absence granted by the Local Board. She maintains that as there is no evidence that she wilfully denied any request made by the Local Board, the finding of insubordination is illegal and constitutes reversible error. We agree, and reverse.

Brawner began teaching in the City of Marietta school system in the fall of 2000. In March 2001, she was diagnosed with breast cancer but managed to complete her teaching duties for the school year. Due to numerous complications that arose from breast cancer, Brawner obtained leave under the federal Family and Medical Leave Act (FMLA) through March 1, 2004. She later obtained long-term disability benefits retroactive to September 2001. In a letter dated February 2, 2004, Judith Sands, human resources administrator for Marietta City schools, informed Brawner that:

> Following an absence for personal illness (childbirth or other serious health condition), the employee *must provide* Human Resources a fitness-for-duty report completed by an appropriate health care provider *prior to being restored to duty*. This must state that the employee is able to resume work.

(Emphasis supplied.) Attached to the letter was a form entitled "Medical Certification — Fitness for Duty Report," and the letter referred to board policy "GBRIG." That policy stated in pertinent part that: *"Upon the employee's return to work*, the school district *may require* the employee to provide certification by his/her health care provider that the employee is able to resume work." (Emphasis supplied.)

In mid-July 2004, Brawner's medical leave of absence was extended to December 31, 2004. On August 2, 2004, Brawner attended part of the first day of a pre-planning session held at her elementary school, where she signed an attendance roster, attended a staff meeting, and introduced herself to the new principal after the meeting. Brawner left the school at around noon for a doctor's appointment, and afterward returned to school to speak with the principal and to return her classroom keys. Sands sent Brawner another letter dated August 3, 2004, restating the February letter and asking that Brawner "provide the school principal with the Medical Certification — Fitness for Duty form before you return to work." On August 9,

2004, Brawner sent Sands an e-mail informing her that she could not provide the requested information because of her continuing medical problems, that despite the principal's request for her written resignation, she was not resigning, and that she was continuing with her disability.

The Local Board sent Brawner a letter and "Notice of Charges" informing her that the Board intended to terminate her teaching contract for the 2004-2005 school year for insubordination because she had returned to work by appearing at the school for part of the pre-planning day without submitting a proper certificate of fitness. The Local Board also notified Brawner that she would be terminated for "good and sufficient cause" because, after reporting for duty at the pre-planning meeting, she was absent from school for the rest of the 2004-2005 school year.

After a hearing, the Local Board terminated Brawner's teaching contract on the grounds of insubordination and good and sufficient cause. The State Board affirmed the Local Board, finding that the question of whether Brawner "returned to work is a question of fact to be determined by the Local Board." The State Board noted:

> Although [Brawner] claims that she did not return to work on August 2, 2004, there was evidence that she signed in as present at the preplanning meeting and a request for payment was made. The Local Board, therefore, could find that [Brawner] went to work without presenting a certificate of availability after being directed to provide such a certificate before starting to work. . . .

> During the hearing, [Brawner] admitted that she received and understood the directive that she was to supply a certificate of availability before returning to work, but she nevertheless attempted to return to work without providing the certificate. The State Board of Education concludes that there was evidence from which the Local Board could conclude that [Brawner] was insubordinate.

Defining insubordination as the "willful disobedience of, or refusal to obey, a reasonable and valid rule, regulation or order issued by the school board or an administrative superior," the State Board found evidence of insubordination. The State Board, however, reversed the Local Board's finding of "other good and sufficient cause" because it found that the Local Board's policy did not foreclose Brawner from being on leave for more than one year.

Brawner appealed to superior court, and based on the "any evidence" standard of review applicable to the case, the trial court found evidence of insubordination. The trial court noted the following:

> On February 2, 2004, a central office administrator directed [Brawner] that she was required to provide a doctor's certificate that she was fit to return to work. [Brawner] admitted that she received and understood this directive. On August 2, 2004, however, there is evidence that [Brawner] returned to work, and signed in as present, without providing such a certificate. There was also evidence that a request for payment was made for the time [Brawner] worked that day. [Brawner] has not asserted that her actions in returning were caused by mere negligence or a legitimate misunderstanding of the directive issued to her.

The trial court concluded that the record contained evidence that Brawner "was insubordinate in returning to work without providing a certificate of fitness for duty, after she was directed to produce such a certificate as a condition of returning to work."

"Since we are called on here to weigh the sufficiency of the evidence, our gauge for doing so is the 'any evidence' rule." (Citations omitted.) *Terry v. Houston County Bd. of Ed.*, 178 Ga. App. 296, 297 (342 SE2d 774) (1986). OCGA § 20-2-940 is referred to as Georgia's Fair Dismissal Act. See *Clinch County Bd. of Ed. v. Hinson*, 247 Ga. App. 33 (543 SE2d 91) (2000). Subsection (a) sets forth eight grounds upon which the contract of employment of a teacher, principal, or other employee having a contract for a definite term may be terminated by a local board of education. These eight grounds are:

> (1) Incompetency; (2) Insubordination; (3) Willful neglect of duties; (4) Immorality; (5) Inciting, encouraging, or counseling students to violate any valid state law, municipal ordinance, or policy or rule of the local board of education; (6) To reduce staff due to loss of students or cancellation of programs; (7) Failure to secure and maintain necessary educational training; or (8) Any other good and sufficient cause.

Brawner contends that no evidence exists to support the Local Board's finding that she was "insubordinate" within the meaning of the statute by voluntarily attending a portion of a pre-planning meeting while on approved leave.

At the termination hearing before the Local Board, the superintendent told the Board that the main two charges against Brawner

were (1) "good and sufficient cause" for failing to fulfill her contractual obligation to teach, and (2) insubordination, for returning to work without the required fitness-for-duty report signed by a physician, despite having notice of the rule. The termination hearing focused on the meaning of "work," whether Brawner admitted working, and whether she was paid for a half day of work. The Local Board and Brawner stipulated that she had been issued a paycheck for part of a day's pay and that the check was put into her school mailbox and was never cashed.

Brawner testified that she went to the pre-planning meeting because

> my classroom had been changed over the summer, and I wanted to make sure that my materials had made the move safely. And also I felt that I needed to go and meet my principal and let her know that I intended to uphold my contract for the year, that even though I couldn't go to work at that moment, that I felt that I would be coming to work very soon.

She also testified that she did not intend to return to teaching after pre-planning because "[m]y doctors would not release me to return to work, but I got so agitated that I wasn't going that they said that they would approve for me to go for one day if I sat down and did very little except listen to my principal and check on my room." She further testified that before going to school for the meeting, she had contacted the Local Board's disability provider, Jefferson Pilot Financial, to make sure that going to work for a day would not jeopardize her disability payments, and was told that it would not.

The Local Board argues that the record contains sufficient evidence of Brawner's insubordination to affirm the superior court's decision. The Board contends that Brawner intentionally disregarded the directive to provide a fitness-for-duty report because she knew that she was unfit to return to work and did so anyway as "part of a series of intentional acts aimed at securing a perpetual employment contract while maintaining long term disability status."

"Insubordination," as a ground for suspension, dismissal, or termination under OCGA § 20-2-940, is, as yet, an undefined term in our courts. The State Board used the following definition for Brawner's appeal: "the willful disobedience of, or refusal to obey, a reasonable and valid rule, regulation or order issued by the school board or an administrative superior."

Other jurisdictions also define "insubordination" to include a wilful disregard of reasonable rules and regulations. See *McClellon v. Gage*, 770 SW2d 466, 469 (Mo. App. 1989) ("a wilful disregard of

express or implied direction or a defiant attitude") (citations omitted); *Butts v. Higher Ed. &c.*, 212 W. Va. 209, 212 (III) (569 SE2d 456) (2002) ("a wilful disobedience of, or refusal to obey, a reasonable and valid rule, regulation, or order issued by the school board or by an administrative superior") (citation omitted). Other jurisdictions emphasize the presence of a persistent course of wilful defiance or a defiant intent. See *Rutan v. Pasco County School Bd.*, 435 S2d 399, 400 (1983) ("constant or continuing intentional refusal to obey a direct order, reasonable in nature, and given by and with proper authority") (citation and punctuation omitted). See also *Bellairs v. Beaverton School Dist.*, 206 Ore. App. 186, 194 (136 P3d 93) (2006) (disobedience of a direct order done with a "defiant intent").

Courts are reluctant to substitute their judgment for that of a school board where its exercise of judgment does not violate the law. We presume that the actions of the board are not arbitrary and capricious, but are reasonable unless there is clear evidence to the contrary. See *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. 339, 340 (599 SE2d 495) (2004). What is more, we are aware that

[s]tates and local authorities have a compelling, legitimate interest and broad discretion in the management of school affairs. Moreover, teachers and principals are considered professionals whose services are affected with the public interest. It follows that state and local authorities have a legitimate interest in securing the employ only of those fit to serve the public interest.

(Citations and punctuation omitted.) *Terry v. Houston County Bd. of Ed.*, supra, 178 Ga. App. at 297.

Here, the February 2004 letter required that Brawner obtain certification of her fitness for duty by an appropriate health care provider "prior to being restored to duty." The record contains no evidence that Brawner sought to be restored to duty, or to restore herself unilaterally. The Local Board may have interpreted her action of attending the pre-planning meeting as seeking to be restored to duty, but no other evidence suggests that on August 2, 2004, Brawner sought to be "restored to duty" as a classroom teacher. Brawner testified that she knew in August 2004 that she was unable to resume her teaching duties and was not capable of going back to work because she needed to undergo additional surgery. No evidence suggests otherwise. Similarly, on August 2, the day of the pre-planning meeting, Brawner knew that her disability benefits had already been extended to December 31, 2004. It follows that if she did not seek to be restored to duty, Brawner did not refuse to obey the directive that she submit a doctor's certification before doing so. Moreover, the

February 2004 letter indicated that she would have to produce certification "prior to being restored to duty," not that she would have to produce such documentation prior to stepping inside the schoolhouse. The dissent confuses physical presence on the premises by an admittedly disabled employee with a return to work. She returned to the workplace; she did not return to work. Only the Local Board had the authority to restore Brawner to full duty, and it could certainly refuse to do so without the requested certification.

While the dissent correctly states that fitness-for-duty reports are required for legitimate purposes including protecting overzealous employees who are not medically ready to return to work, and shielding the employer from tort claims, the employer, not the employee, is the gatekeeper in those circumstances. The employer must take action before determining that the employee has officially returned to work.

In Brawner's case, she was to produce a certification that she was medically able to return to work, and the Local Board had to be in receipt of the certification before it restored her to duty. There could be no return to work absent these steps no matter Brawner's attempt otherwise. The clear language of the Board's directive was that it required a fitness-for-duty report before it would restore an employee in Brawner's circumstances to duty. It follows that a "return to work" requires more than being physically present at the job site.

Thus, we find no evidence of insubordination because Brawner did not wilfully disobey, or refuse to obey, "a reasonable and valid rule, regulation or order issued by the school board or an administrative superior." We therefore reverse the ruling of the superior court. As we noted in *Terry v. Houston County Bd. of Ed.*, supra, 178 Ga. App. at 299, "we seek not to interfere with the local school board's authority to regulate its schools; we seek only to provide guidance so that [its] authority will be carried out in a consistent and fair manner."

*Judgment reversed. Johnson, P. J., Blackburn, P. J., Miller and Bernes, JJ., concur. Andrews, P. J., and Ellington, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Under our law construing the Georgia Fair Dismissal Act, OCGA § 20-2-940, "any evidence" will suffice to support findings of the State Board of Education on the question whether an employee was insubordinate. *Terry v. Houston County Bd. of Ed.*, 178 Ga. App. 296, 297 (342 SE2d 774) (1986). It is undisputed that months after receiving written instructions to provide a fitness-for-duty medical certification before returning to work, Brawner signed an attendance roster and attended a staff meeting at the pre-planning session of August 2, 2004, without providing the certification. Because these facts amount

to some evidence to support a finding that Brawner was insubordinate, I respectfully dissent.

Sent months before the incident in question, the local board's letter of February 2, 2004, is perfectly clear that "[f]ollowing an absence for personal illness . . . , the employee must provide . . . a fitness-for-duty report completed by an appropriate health care provider prior to being restored to duty," with the report stating "that the employee is able to resume work." Brawner's own testimony establishes that she knew she could not resume her duties in August 2004, because "I was still sick. I was three weeks out of surgery. . . . I knew that I was on long-term disability, which has no end until I get well." Indeed, her doctors "would not release [her] to return to work," but informally approved her attendance "for one day if I sat down and did very little except listen to my principal and check on my room."

Fitness-for-duty reports like the one required here have at least two complementary purposes: to protect an overzealous employee from returning to work when she is not medically ready, and to shield the employer from tort claims that might arise from injuries sustained in a premature return to work. Requiring such a report is reasonable under the law of this or any other jurisdiction, and Brawner's failure to provide it raised a question of fact concerning her insubordination. See *Terry*, supra at 297 (State and local boards "have a legitimate interest in securing the employ only of those fit to serve the public interest") (citation and punctuation omitted); see also *Jones v. Alabama State Tenure Comm.*, 408 S2d 145 (Ala. Civ. App. 1981) (tenured teacher's refusal to perform scheduled supervision duty supported tenure commission's finding that he was insubordinate); *Cook v. Plainfield Community School Dist.*, 301 NW2d 771 (Iowa App. 1980) (teacher's failure to develop programs in compliance with directives and to complete staff evaluations provided sufficient evidence of insubordination).

As both the State Board and the superior court held, the question whether Brawner's reporting to the pre-planning day and signing an attendance sheet amounted to a "return to work" is one of fact, as is the question whether her failure to supply the required certification of fitness was wilful. Neither we nor the superior court are empowered to interfere with a local board's acts of administration "unless the board has grossly abused its discretion or acted arbitrarily or contrary to law." (Footnote omitted.) *Clinch County Bd. of Ed. v. Hinson*, 247 Ga. App. 33, 36 (1) (543 SE2d 91) (2000) (reversing superior court's reversal of State Board's recommendation of termination where some evidence supported the State Board's decision). The record in this case provides some evidence to support the judgment of the State Board that Brawner returned to work without

18

providing the required fitness-for-duty report, and that this act amounted to insubordination. I therefore dissent.

I am authorized to state that Judge Ellington joins in this dissent.

DECIDED MARCH 28, 2007 —
RECONSIDERATION DENIED APRIL 12, 2007 — 

*Kramer & Patel, Michael E. Kramer, Shalini A. Patel*, for appellant.

*Brock & Clay, Clement C. Doyle*, for appellee.