**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 31, 2016**

# In the Court of Appeals of Georgia

A16A0201. HENRY COUNTY BOARD OF EDUCATION v. S.G.    PE-007

PETERSON, Judge.

Following a hearing, the Henry County Board of Education (the "Local Board") expelled S. G. from a county high school for fighting on school grounds in violation of the student handbook. The State Board of Education (the "State Board") affirmed the Local Board's ruling, but the superior court reversed, finding that S. G. was justified in using force because she acted in self-defense. We granted the Local Board's application for discretionary review, and on appeal, the Local Board argues that the superior court failed to apply the proper standard of review and erred by substituting its judgment for that of the Local Board. We affirm the superior court's ruling because the Local Board abused its discretion by failing properly to apply self-defense standards when expelling S. G. for fighting on school grounds.

On appeal from the superior court's review of a local board's student disciplinary action, we must view the record in the light most favorable to the Local Board's decision. *See C.P.R. v. Henry County Bd. of Educ.*, 329 Ga. App. 57, 59 (763 SE2d 725) (2014). So viewed, the record shows that S. G. was a student at Locust Grove High School, where her mother was an employee. At the end of a school day in January 2014, S. G. went to her mother's vehicle and, as she was walking back towards the school, she and another student had a verbal confrontation. A video recording shows the other student following S. G. until S. G. stopped at a brick pillar near the building's entry. S. G. and the other student continued to argue. The other student briefly stepped towards S. G. and came very close to touching S. G. before stepping back. S. G. then punched the other student, grabbed the student, and took the student to the ground. Once on the ground, S. G. sat astride the student and punched her until S. G. was pulled off by her mother. The other student then got off the ground and again moved towards S. G.; S. G. again threw the student to the ground, sat on top of her, and remained over her for more than 15 seconds before being pulled off

a final time. Following the fight, the School Resource Officer (SRO) charged S. G. with an unspecified misdemeanor.[1]

A hearing officer subsequently held a disciplinary hearing. At the hearing, S. G. testified to events that transpired before those captured in the video recording. S. G. testified that the other student had taunted her and yelled, "Let's fight now." S. G. testified that she walked away, at which point the other student continued to yell at her and followed her, as displayed in the video recording. A school secretary who witnessed the fight testified that she believed the other student was the aggressor, because the other student followed S. G. and made comments like "If you want to do something, do it now," or "We'll do it now." Based on viewing a video recording of the fight, the hearing officer decided to expel S. G. for being involved in a fight on school grounds.

S. G. appealed to the Local Board, arguing that the other student was the aggressor and S. G. acted in self-defense. The Local Board adopted the hearing officer's findings, the entirety of which are as follows:

> [S. G.] was involved in a fight on school grounds. The other female moved towards [S. G.] and [S. G.] hit the girl and the fight ensued. [S.

---

[1] The record does not reveal the status of that criminal charge.

G.] threw the other student to the ground and began hitting her in the face numerous times. The fight was broken up and the other female walked toward [S. G.] and the fight continued. The other student received a busted lip and blood on her face. The SRO charged [S. G.] with a misdemeanor under Georgia law. Based on S. G.'s involvement in the fight, the Local Board concluded that S. G. committed two "Section 2 Offenses" from the Secondary Student Handbook — for physically abusing others and for violations that constitute a misdemeanor. The Local Board expelled S. G. from her high school and allowed her to attend an alternative school.[2]

The State Board affirmed the Local Board's decision, finding that the video recording and other record evidence supported the Local Board's decision that S. G. did not act in self-defense because, although she had the opportunity to retreat, she stopped at the pillar and threw the first punch. S. G. then sought review in the superior court.

Following a hearing, the superior court concluded that the State Board misapplied the law regarding self-defense by requiring S. G. to show that she had no

_____

[2] Although the term of S. G.'s expulsion has now expired and she has graduated from high school, whether she violated the student handbook, and thus whether the infraction should remain on her school disciplinary record, is not moot. *See Fulton County Bd. of Ed. v. D.R.H.*, 325 Ga. App. 53, 60-61 (2) (752 SE2d 103) (2013); *see also Jayko v. State*, No. A16A0191, 2016 WL 534849, at *2 (Ga. Ct. App. Feb. 11, 2016).

ability to retreat before using force. The superior court concluded that S. G.'s actions were justified because the other student lunged at S. G. before S. G. responded with force. This appeal followed.

On appeal, the Local Board argues that the superior court erred by substituting its judgment for that of the Local Board in resolving S. G.'s claim of self-defense and by failing to apply the "any evidence" standard in reviewing the Local Board's decision.

In reviewing the disciplinary decisions of the Local Board, we apply the "any evidence" standard of review. *See C.P.R.*, 329 Ga. App. at 62 (1). Under this standard, we accept factual findings unless they are clearly erroneous. *See Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012); *Patel v. Patel*, 285 Ga. 391, 392 (1) (a) (677 SE2d 114) (2009). As to the Local Board's ultimate decision, i.e., whether and what type of sanction to impose, "[c]ourts are reluctant to substitute their judgment for that of a school board where its exercise of judgment does not violate the law. We presume that the actions of the board are not arbitrary and capricious, but are reasonable unless there is clear evidence to the contrary." *Brawner v. Marietta City Bd. of Educ.*, 285 Ga. App. 10, 15 (646 SE2d 89) (2007) (citation omitted). Thus, in reviewing the Local Board's decision to expel S. G., we are required to affirm

absent an abuse of discretion, which would be present if the Local Board misapplied the relevant law or if its rulings are not supported by the evidence. *See Clinch County Bd. of Educ. v. Hinson*, 247 Ga. App. 33, 36 (1) (543 SE2d 91) (2000); *Lewis v. Lewis*, 316 Ga. App. 67, 68 (728 SE2d 741) (2012). Central to this appeal is whether the self-defense standards under OCGA § 16-3-21 apply to school disciplinary hearings and, if they do, whether the Local Board properly applied the statute in expelling S. G.

1. *Self-defense law and its application to non-criminal proceedings*

"A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force[.]" As the Local Board argues happened here, a person is not justified in using force when she engages "in combat by agreement unless [s]he withdraws from the encounter and effectively communicates to such other person [her] intent to do so and the other, notwithstanding, continues or threatens to continue the use of unlawful force." OCGA § 16-3-21(b). Any ordinance, resolution, rule, regulation, or policy of any county or other political subdivision of the state that conflicts with OCGA § 16-3-21 "shall be null, void, and of no force and effect." OCGA § 16-3-

6

21(c). The Local Board is a political subdivision of the state and thus its rules are subject to this code section. *See Coffee Cty. Sch. Dist. v. Snipes*, 216 Ga. App. 293, 294 (454 SE2d 149) (1995). This provision of OCGA § 16-3-21, although appearing in the criminal code, applies in other contexts as well. *See Allen v. City of Atlanta*, 235 Ga. App. 516, 517-18 (510 SE2d 64) (1998) (holding that a municipality's workplace rule precluding the use of force, regardless of whether such use was in self-defense, was invalid because it conflicted with OCGA § 16-3-21). Accordingly, we now consider whether the Local Board applied those standards in this case.

2. *The Local Board's findings and application of self-defense standards*

The Local Board made limited factual findings that consisted mainly of a determination that S. G. was involved in a fight on school grounds and caused physical injuries to the other student. The Local Board made no express finding related to S. G.'s justification defense, much less render an explicit decision on that defense, but argues that it implicitly did so. We ordinarily presume that public officials, which would include members of the Local Board, properly discharge their duties, but only in the absence of evidence to the contrary. *See Bank of Clearwater v. Kimbrel*, 240 Ga. 570, 571 (242 SE2d 16) (1978). We cannot indulge in that presumption here because the Local Board's express findings do not support an

7

implicit rejection of S. G.'s self-defense claim; its arguments advanced subsequent to making these express findings for an "implicit rejection" of S. G.'s claim are not supported by the record evidence; and there is evidence that the Local Board has previously failed to consider properly other students' claims of self-defense.

(a) *Evidence showing that the Local Board did not consider S. G.'s self-defense claim*

The limited factual findings made by the Local Board, while supported by the evidence, do not support the Local Board's argument that it properly applied self-defense laws in expelling S. G. The Local Board expressly found that the fight started when the S. G. hit the other student *after* the student moved towards S. G. One could read this express finding as supporting an implicit finding that S. G. did act in self-defense. Such a finding would be supported by the record, because an eyewitness testified that the other student was the aggressor and the video undisputedly shows that the other student followed S. G. before coming within inches of S. G. Although an implicit finding that S. G. acted in self-defense is the most natural reading of the Local Board's express findings, this would be at odds with the Local Board's ultimate conclusion to expel S. G., leaving us to wonder whether the Local Board actually considered S. G.'s self-defense claim.

Our doubt is compounded by the Local Board's attempts to show that it considered S. G.'s claim. Before the State Board, the Local Board made no argument that OCGA § 16-3-21 did not apply to school disciplinary hearings ; rather, it argued to the State Board that S. G.'s self-defense claim was precluded by OCGA § 16-3-21(b)(1) based on allegations that she was engaged in mutual combat. By virtue of its arguments to the State Board, the Local Board implicitly conceded that OCGA § 16-3-21 applied to school disciplinary hearings. Notwithstanding these arguments below, and despite claiming that it considered and rejected S. G.'s claim of self-defense, the Local Board argues for the first time on appeal that the criminal self-defense standards do not apply to school disciplinary hearings. If the Local Board does not believe that OCGA § 16-3-21 applies to school disciplinary hearings, it is hard to fathom how the Local Board could have possibly considered S. G.'s justification defense.[3]

(b) *Assuming the Local Board considered S. G.'s claim, it nevertheless erred*

---

[3] Additionally, the Local Board made no argument to the State Board that that S. G. was precluded from a justification defense because she failed to retreat. The expansion of the Local Board's arguments through the course of the proceedings suggests a post-hoc rationalization for its disciplinary action and is further evidence that the Local Board did not really evaluate S. G.'s self-defense claim.

The Local Board argues that it implicitly rejected S. G.'s claim because she was engaged in mutual combat and did not retreat from the encounter before punching the other student. Before addressing the merits of these arguments, it is important to recap the evidence in the record. The record here consists of the following witness testimony: the assistant principal, who does not appear to have witnessed the fight and who served as the school's advocate at the hearing; the SRO, who only confirmed that he charged S. G. with a misdemeanor and did not state that he observed the fight; a school secretary, who was present for the fight and who testified that the other student was the aggressor; S. G., who testified that she hit the other girl after the other girl came after her and pushed her; and S. G.'s mother, who testified that she heard S. G. tell the other student to get away from her and that the other student insisted on fighting.

The testimony of the only people who testified they actually witnessed the fight — the school secretary, S. G., and her mother — is uniform and largely corroborated by the video recording, which undisputedly shows S. G. walking towards the building (camera), followed quickly by the other student, and S. G. stopping with her back to a pillar, at which time the other girl comes within inches of S. G.'s face. The undisputed evidence also reveals that S. G. hit the other student first, took her to the

ground, and repeatedly hit her while sitting on top of her. Even after S. G. repeatedly punched the other student, the student again went after S. G. when the girls were first separated.

When considering the prior difficulties between S. G. and the other student, which the Local Board acknowledges, the corroborated testimony that the other student was the aggressor, and the other student's attempt to attack S. G. after being separated, there is sufficient evidence to support a claim that S. G. reasonably believed that she had to use force to protect herself from the other student. Because there is credible evidence to support a justification defense, it was for the Local Board to disprove that defense. *Cf. White v. State*, 312 Ga. App. 421, 424 (1) (718 SE2d 335) (2011).[4] It failed to do so.

The Local Board first argues that S. G.'s use of force was not justified because she was engaged in mutual combat. Assuming that the Local Board had found that S. G. and the other student agreed to fight based on evidence that S. G. and the other student had been having problems prior to the fight and were rumored to have plans

---

[4] We are not importing the requirement from criminal prosecutions that a defendant's justification defense be disproved beyond a reasonable doubt. *See White*, 312 Ga. App. at 424 (1). We need not decide what level of proof applies here, because no matter what standard is used, the Local Board has presented no basis to disprove S. G.'s self-defense claim.

to fight, the video clearly shows that, rather than taking steps to ensure a fight would occur, as the Local Board argues, S. G. walked away from the other student and the other student aggressively followed S. G. *See Clay v. State*, 290 Ga. 822, 825, n.1 (725 SE2d 260) (2012) ("This Court owes no deference to a trial court's factual findings gleaned from a review of a videotape that are not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence."). Therefore, the undisputed evidence of S. G.'s walking away shows an intention to withdraw from any agreement to fight, if there ever was one. *See* OCGA § 16-3-21(b) ("A person is not justified in using force . . . if he . . . was engaged in combat by agreement unless he withdraws from the encounter and effectively communicates to other person his intent to do so[.]").

The Local Board also argues that, because S. G. stopped at the brick pillar, she did not completely withdraw or retreat from the situation, and therefore her conduct could not have been in self-defense. As discussed above, the evidence shows that S. G. was not the aggressor. As a result, she had no duty to retreat before being justified in using force to protect herself. OCGA § 16-3-23.1; *see also Johnson v. State*, 253 Ga. 37, 38 (315 SE2d 871) (1984). Although the other student had stepped back before S. G. threw the first punch, this was preceded by the other student's aggressive

12

behavior. OCGA § 16-3-23.1 did not require S. G. to be hit first before defending herself; nor was S. G. required to have lost the fight in order to claim self-defense. That an individual prevails in standing their ground against an aggressor does not make her actions unlawful. Thus, the evidence does not support the Local Board's reasons for "implicitly rejecting" S. G.'s justification defense on the basis that she was engaged in mutual combat and did not retreat.

Our review of the Local Board's order and record show either that the Local Board did not consider S. G.'s claim of self-defense or its grounds for rejecting her claim are not supported by the record. And the Local Board's remaining arguments on appeal only bolster our conclusion.

(c) *Evidence that the Local Board has a zero-tolerance policy toward school fights and fails to consider self-defense claims*

S. G. suggests that the Local Board's decision to expel her merely on a finding that she was in a fight proves that the board has a zero-tolerance policy that conflicts with OCGA § 16-3-21. In support of her argument, S. G. cites prior State Board rulings reversing this Local Board's disciplinary decisions for ignoring students' evidence of self-defense. *See Q. W. v. Henry Cty. Bd. of Ed.*, Case No. 2013-64 (Ga. SBE, August 2013) (reversing Henry County Board of Educations's suspension of

13

student who engaged in mutual combat where the evidence showed that the other student was the aggressor); *T. P. v. Henry Cty. Bd. of Ed.*, Case No. 2005-25 (Ga. SBE, April 2005) (reversing Henry County Board of Educations's expulsion of student for fighting on school grounds where the local board disregarded self-defense evidence).

Rather than refuting S. G.'s characterization of its policy, the Local Board defends its procedures and argues that it should be afforded broad flexibility to impose whatever disciplinary sanctions are necessary to maintain order and such rules should not be subject to criminal law standards, including OCGA § 16-3-21. The Local Board's position that the state's criminal law of self-defense does not apply to its disciplinary hearings is not supported by legal authority, as discussed above.

The Local Board's reliance on *Bethel School District No. 403 v. Fraser*, 478 U. S. 675, 686 (106 S. Ct. 3159, 92 LE2d 549) (1986) does not alter our analysis. In *Bethel*, the Supreme Court considered a due process challenge to a school's disciplinary rule and held that school rules need not be as detailed as criminal codes in order to give adequate warning of sanctionable conduct. *Id.* The fact that the *Bethel* Court stated that schools should "be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process" does not

14

establish legal precedent that school districts are permitted to implement disciplinary policies that contravene state laws. As the Eleventh Circuit has observed, "[t]he opinions of the Supreme Court are not the United States Code. Every sentence in a Supreme Court opinion is not law. Only the holdings of Supreme Court decisions are law." *Natson v. United States*, 494 Fed. Appx. 3, 5 n.2 (11th Cir. 2012). The Local Board's argument that *Bethel* stands for the proposition that criminal laws have no place in school disciplinary proceedings, beyond being inaccurate, is also disingenuous because the Local Board relies on criminal laws to measure conduct as sanctionable. The student handbook lists as conduct subject to expulsion or suspension violations that constitute a misdemeanor, and one of the grounds upon which the Local Board expelled S. G. was that she was charged with a misdemeanor. Thus, although school boards may be afforded certain latitude in creating and enforcing their rules, they still have a duty to fashion rules and policies that are in harmony with state laws, including OCGA § 16-3-21. OCGA § 16-3-21(c); *cf.* OCGA § 20-2-109 ("It shall be the local school superintendent's duty to enforce all regulations and rules . . . of the local board according to the laws of the state and the rules and regulations made by the local board that are not in conflict with state laws[.]").

15

The Local Board, through its actions and arguments, has demonstrated a policy of expelling students for fighting on school grounds regardless of whether the student was acting in self-defense. The Local Board's rejection of S. G.'s justification defense is consistent with that zero-tolerance policy, is inconsistent with the requirements of OCGA § 16-3-21(c), is not supported by the record, and, therefore, amounted to an abuse of discretion. Accordingly, we affirm the superior court's reversal of the Local Board's ruling.[5]

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*

---

[5] We recognize that the superior court's order focused on the State Board's determination, rather than the Local Board's rulings, but we may affirm the superior court's ruling if it is right for any reason. *See Bailey v. Hall*, 267 Ga. App. 222, 223, n.1 (599 SE2d 226) (2004) (judgment may be affirmed as right for any reason when judgment may be sustained upon legal basis apparent from the record that was fairly presented in court below). S. G. argued below that the hearing officer and Local Board erred in expelling her without considering her evidence of self-defense ; thus, we may apply the right for any reason rule.