## A04A0564. MOULDER v. BARTOW COUNTY BOARD OF EDUCATION.
### (599 SE2d 495)

PHIPPS, Judge.

Velma Jean Moulder was employed by the Bartow County Board of Education ("Local Board") as an elementary school teacher. Shortly after the Local Board offered to renew Moulder's employment, the Superintendent of the Bartow County School System ("Local Superintendent") informed her that he was proposing termination of her contract. Following a hearing, the Local Board voted to terminate Moulder. She appealed to the State Board of Education ("State Board"), which reversed the Local Board on grounds that Moulder had done nothing to justify her termination after the Local Board had offered to renew her contract. The Local Board appealed the State Board's decision to the Superior Court of Bartow County, which reversed the State Board on grounds that it had overstepped its authority in overturning the decision of the Local Board. We granted Moulder's application for discretionary appeal of the superior court's decision. Concluding that the State Board acted within its authority, we reverse the superior court.

## Georgia's statutory scheme

OCGA § 20-2-940 is referred to as Georgia's Fair Dismissal Act.[1] Subsection (a) sets forth eight grounds upon which the contract of employment of a teacher, principal, or other employee having a contract for a definite term may be terminated by a local board of education. These eight grounds are:

(1) Incompetency; (2) Insubordination; (3) Willful neglect of duties; (4) Immorality; (5) Inciting, encouraging, or counseling students to violate any valid state law, municipal ordinance, or policy or rule of the local board of education; (6) To reduce staff due to loss of students or cancellation of programs; (7) Failure to secure and maintain necessary educational training; or (8) Any other good and sufficient cause.

Subsection (b) of the Act requires that the teacher, principal, or other employee under contract for a definite term be given written notice of the charges, along with certain information to enable preparation of a defense. Subsection (e) requires a hearing before the local board or a board-designated tribunal. Under subsection (f), appeals from the decision of the local board may be taken to the State Board in accordance with OCGA § 20-2-1160.

Under OCGA § 20-2-1160 (c), any party aggrieved by the decision of the State Board may appeal to the superior court of the county wherein the local board is situated. Subsection (e) states that, "[n]either the state board nor the superior court shall consider any question in matters before the local board nor consider the matter de novo, and the review by the state board or the superior court shall be confined to the record." Thus, when reviewing decisions of a local board, both the State Board and superior court sit as appellate bodies applying an "any evidence" rule to the facts of the case.[2] It has been held that the superior court should not interfere with a local board's administration of its schools unless the board has grossly abused its discretion or acted arbitrarily or contrary to law.[3] But it has also been recognized that the State Board is the governmental agency charged by law with enforcement of the Fair Dismissal Act and that its interpretation of the statute, though not conclusive, is entitled to great weight.[4]

---

[1] See *Clinch County Bd. of Ed. v. Hinson*, 247 Ga. App. 33 (543 SE2d 91) (2000).

[2] *Ransum v. Chattooga County Bd. of Ed.*, 144 Ga. App. 783, 785 (5) (242 SE2d 374) (1978).

[3] *Hinson*, supra at 36 (1).

[4] *Curry v. Dawson County Bd. of Ed.*, 212 Ga. App. 827, 829 (1) (442 SE2d 919) (1994).

Where statutory provisions are ambiguous, courts should give great weight to the interpretation adopted by the administrative agency charged with enforcing the statute. Although [the appellate court] is "not bound to blindly follow" an agency's interpretation, we defer to an agency's interpretation when it reflects the meaning of the statute and comports with legislative intent.[5]

OCGA § 20-2-942 is Georgia's teacher tenure statute. Paragraph (b) (1) of this statute states: "A teacher who accepts a school year contract for the fourth consecutive school year from the same local board of education may be demoted or the teacher's contract may not be renewed only for those reasons set forth in subsection (a) of Code Section 20-2-940."

OCGA § 20-2-211 (b), which is part of Georgia's Quality Basic Education Act, provides that each local board shall, by no later than April 15 of each school year, tender a new contract for the ensuing school year to each certified teacher, except those who have resigned or who have been terminated, or give each such teacher written notice of the intention of not renewing his or her contract for the ensuing school year. Subsection (b) further provides that when notice of intended termination has not been given by April 15, the employment of the teacher shall be continued for the ensuing school year unless the teacher elects not to accept such employment by notifying the local board or executive officer in writing not later than May 1.

*Facts*

Moulder was hired by the Local Board in 1989 and taught several different grades, including kindergarten, at White Elementary School in Bartow County. On February 12, 2002, Moulder grabbed one of her third grade students by the shoulders in a harsh manner. On February 14, she met with the school's principal and with its human resources director, and she was warned that her contract would be terminated if she inappropriately touched her students in the future. On February 20, the Local Board issued a new employment contract to Moulder and other teachers for the 2002-2003 school year. On February 22, Moulder filed a grievance complaining about the school principal's handling of the February 12 incident. On March 4, the principal held a grievance hearing. During the hearing, the principal

---

[5] (Footnotes omitted.) *Schrenko v. DeKalb County School Dist.*, 276 Ga. 786, 791 (2) (582 SE2d 109) (2003).

informed Moulder that she was recommending termination of Moulder's 2002-2003 contract. On March 7, Moulder signed and returned the contract issued to her on February 20. On June 28, the Local Superintendent wrote to Moulder that he was going to seek termination of her 2002-2003 teaching contract because of persistent inappropriate and abusive conduct directed at children, grossly unprofessional conduct, and insubordination.

A hearing was held before the Local Board on July 9. At the hearing, the parties agreed that Moulder had not done anything after the February 12 incident that would lead to her termination. All of the incidents presented by the Local Board had occurred before it offered Moulder a contract for the 2002-2003 school year. Over objection, the Local Board introduced evidence of instances of improper interaction with students in prior school years. The Local Board argued that the evidence was for the purpose of showing a pattern of improper conduct through the years. Based on testimony given by a number of witnesses, the Local Board found that on numerous occasions during the 2001-2002 school year and before, Moulder had interacted with students in a physically abusive and inappropriate manner; that on numerous occasions through the years, including the 2001-2002 school year, parents had requested reassignment of their children out of Moulder's class at a rate far greater than from other teachers; that in her annual performance evaluations for certain school years during the 1990s, concerns had been noted as to the manner in which Moulder interacted with students; and that Moulder had been given an unsatisfactory annual evaluation for the 2001-2002 school year as a result of these continuing problems.

*Decisions below*

Based on the evidence introduced at the July 2002 hearing, the Local Board concluded that the numerous incidents reflected "a consistent and persistent pattern of conduct accompanied by an un-remorseful attitude" which posed "a clear and present obstacle to the proper educational development of the . . . students" with whom Moulder interacted. The Local Board found Moulder's misconduct so egregious as to preclude any possibility that the proposed termination of her contract was undertaken as a result of the grievance she had filed and that the Bartow County School District, therefore, was not prohibited from terminating her contract because of the earlier annual renewal of her contract required by Georgia law. Accordingly, the Local Board terminated Moulder's contract based on the charges brought by the Local Superintendent.

On appeal, the State Board held, in reliance on its 1990 decision

in a case styled *Peterson v. Brooks County Bd. of Ed.*,[6] that the Local Board could not terminate Moulder's 2002-2003 contract based solely on events that occurred before the contract was issued. The State Board noted, however, that incidents that occur before a contract renewal can be presented for the purpose of establishing a course of conduct, so that the previous incidents could be presented against Moulder if termination proceedings are initiated based on any subsequent incidents of misconduct by her.

In reversing the State Board, the superior court noted that the State Board's decision in *Peterson* was reversed by order of the Superior Court of Brooks County (albeit on other grounds). That order relied on the decision of this court in *Terry v. Houston County Bd. of Ed.*,[7] which held that,

> [l]ocal authorities have a compelling, legitimate interest and broad discretion in the management of school affairs. . . . [T]he ability to discharge even tenured personnel when deemed necessary to the proper functioning of the schools is essential to the exercise of authority over a school system. But, in applying this authority local boards may not operate arbitrarily.[8]

The superior court in this case also concluded that out-of-state decisions such as that by the Michigan Court of Appeals in *Sutherby v. Bd. of Ed. of Gobles Public Schools*[9] conflict with *Peterson*.

### Out-of-state judicial decisions

The Michigan Court of Appeals in *Sutherby* merely held that where a tenured teacher is being terminated, there is no inflexible rule prohibiting admission of evidence of events that occurred during school years preceding the school year in which charges were brought. In *Sutherby*, however, dismissal of the teacher was also supported by events which occurred after a decision had been made to renew his contract. As to the admissibility of evidence of prior events, the *Sutherby* court concluded:

---

[6] (State Board of Education; Case No. 1990-29; decided December 13, 1990), rev'd on other grounds, *Brooks County Bd. of Ed. v. Peterson* (Superior Court of Brooks County; Civil Action No. 91-CV-43; decided August 2, 1991).

[7] 178 Ga. App. 296 (342 SE2d 774) (1986).

[8] (Citations and punctuation omitted.) Id. at 297.

[9] 348 NW2d 277 (Mich. App. 1984).

Requiring teachers to answer charges concerning events which occurred during a previous school year is not fundamentally unfair. We find no instance in the present case supporting the claim of significant loss of a teacher's ability to defend himself due to the lapse of time. While individual cases may occur in which the delay in bringing charges might render a dismissal unjust or unreasonable, fundamental fairness can be achieved without creating a general rule forbidding the consideration of charges based on events from a previous school year.[10]

In support of its decision, the *Sutherby* court cited the decision of the Supreme Court of Minnesota in *Cochrane v. Peterson*.[11] In *Cochrane*, a tenured teacher was terminated based on charges of inefficiency filed at the beginning of the school year. The teacher argued that her inefficiency in teaching in prior years could not be inquired into or made the basis for discharging her. The *Cochrane* court found this argument "unsound," reasoning,

Where teachers have attained permanent employment under the tenure act, there is no reason why, upon a charge of inefficiency, the past conduct as a teacher should not be open to scrutiny. . . . That the authorities have been patient with a teacher and have tried him or her in different positions in the hope of finding some place where efficiency was manifested should not defeat the right to discharge such teacher if efficiency nevertheless was not attained.[12]

*Cochrane* also was relied upon by the Supreme Court of New Mexico in *Roberson v. Bd. of Ed. of the City of Sante Fe*,[13] which gave thoughtful consideration to the question of whether a teacher can be discharged under a state tenure statute before entering into performance of a tendered and accepted contract because of known conduct which preceded her entry into the contract. The court concluded that the tenure statute, which authorized termination for "good cause," did not "give[ ] any hint as to the answer," because "[w]hat may constitute 'good cause' [was] not explained."[14] Citing *Cochrane*, the *Roberson* court held that where the charge is inefficiency in teaching, there is no reason why past conduct should not be open to scrutiny. In

---

[10] Id. at 279.
[11] 294 NW 203 (Minn. 1940).
[12] Id. at 205.
[13] 459 P2d 834 (N.M. 1969).
[14] Id. at 837.

*Roberson*, however, the court ultimately held that because the only evidence relied upon for cancellation of the teacher's contract for future services related solely to known conduct during prior periods of employment, discharge of the teacher was unauthorized.[15]

In support of its decision, the *Roberson* court cited the decision of the Supreme Court of Ohio in *Powell v. Young*,[16] as holding that although episodes of misconduct prior to the effective date of a tenure contract cannot be the ground for termination of that contract, there is no reason why the past conduct of a teacher should not be open to scrutiny where the charge is gross inefficiency. The *Roberson* court also found compelling the holding in *Ottinger v. School Dist. No. 25*,[17] to the effect that, under general contract law, matters which occurred under a prior contract cannot support cancellation of a subsequent contract.[18]

## *Decisions by the Georgia State Board*[19]

In *Peterson*, the Superintendent of the Brooks County School System had recommended nonrenewal of the contract of the county high school's principal after the principal tried to unseat the superintendent in a local election. A hearing was held before a tribunal from the Georgia Professional Practices Commission, which adopted the superintendent's recommendation. On appeal, the State Board reversed the local board's decision not to renew the principal's contract on the ground that it had unduly restricted his cross-examination of the superintendent. In reviewing the evidence, the State Board also noted that certain charges against the principal related to incidents that had occurred before his last contract had been renewed, and the Board held, "Evidence of incidents that occurred before a contract renewal can be presented for the purpose of establishing a course of conduct, but such incidents cannot be used to recommend against renewal in a subsequent year."

On appeal in *Peterson*, the Superior Court of Brooks County reversed the decision of the State Board, ruling that the tribunal had not abused its discretion in placing limitations on the scope of

---

[15] Id. at 838; see *Kleinberg v. Bd. of Ed. of the Albuquerque Public Schools*, 751 P2d 722 (N.M. App. 1988).

[16] 74 NE2d 261 (Ohio 1947).

[17] 247 SW 789 (Ark. 1923).

[18] Accord *Roller v. Young*, 67 NE2d 710 (Ohio 1946); *Farrell v. School Dist. No. 2*, 56 NW 1053 (Mich. 1893).

[19] There is no system in place for the reporting or publishing of decisions of the State Board. Consequently, we are unable to review such decisions except where, as here, they are cited in the record of a case under review.

cross-examination of the superintendent and that there was sufficient evidence in the record to support the decisions of the tribunal and local board. But the superior court indicated approval of the State Board's limitation on the purpose for which evidence of prior misconduct may be admitted.

In *Lee v. Thomas County Bd. of Ed.*,[20] the question before the State Board was whether a local board could terminate a teaching contract under OCGA § 20-2-940 (a) (6) based on a loss of students occurring *after* the teacher's annual contract had been issued. The State Board answered that question in the affirmative, on grounds that the local school administration could not have ascertained the existence of the student loss until after annual contracts were issued and that the statute actually contemplates that any loss of students will be determined after a contract has been issued to the teacher. (Otherwise, loss of students would result in nonrenewal of a teacher's contract rather than termination of it.)[21]

In *Shell v. Atlanta Bd. of Ed.*,[22] the local board neither tendered the teacher a new contract on April 15 nor notified the teacher of an intention of not renewing her contract,[23] but on May 1 the local superintendent notified the teacher that he would seek termination of her teaching contract on grounds of incompetence, insubordination, and other good and sufficient cause. The local board voted to terminate the teacher's contract, and the State Board upheld its decision.

## *Our conclusions*

Undisputably, Moulder was a tenured teacher whose contract of employment was terminated based solely on misconduct that occurred before the Local Board's annual decision to renew the contract. Although it can be argued that "fundamental fairness can be achieved without creating a general rule,"[24] the State Board in *Peterson*, in line with judicial decisions in other states, held that termination under these circumstances is unauthorized. Some of those decisions were based on general contract principles. Georgia's Fair Dismissal Act is silent on the question, and an argument can be made that general contract principles govern a teaching contract except as modified by statute. Moreover, Georgia's Quality Basic Education Act seems to

---

[20] Case No. 1990-25 (decided December 14, 1990).

[21] *Lee* thus supports the argument that contract termination should be at least partially based on events occurring after a contract has been renewed.

[22] Case No. 1998-46 (decided November 12, 1998).

[23] This distinguishes *Shell* from this case.

[24] *Sutherby*, supra.

provide some protection to a teacher under these circumstances. The State Board is the governmental agency charged with responsibility for enforcing these statutes. We thus conclude that its decision in *Peterson* constitutes an authorized interpretation of the intended statutory scheme. For this reason, the superior court erred in reversing the State Board in this case.

*Judgment reversed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED APRIL 20, 2004 —
RECONSIDERATION DENIED MAY 11, 2004 — 

*Kramer & Thomas, Michael E. Kramer*, for appellant.
*Brock, Clay, Calhoun, Wilson & Rogers, Raymond C. Buday, Jr., Neeru Gupta*, for appellee.