**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 9, 2013**

# In the Court of Appeals of Georgia

A13A1578. KING v. WORTH COUNTY BOARD OF EDUCATION.

ELLINGTON, Presiding Judge.

Pursuant to a granted application for discretionary review, Calvin King appeals from the order of the Superior Court of Worth County affirming the Worth County Board of Education's decision not to renew King's teaching contract. King contends that the superior court erred, and that the local school board's decision must be reversed. He contends that the school board's decision was based upon inadmissible evidence and that he was not given sufficient notice of the grounds for the non-renewal of his teaching contract. Finding no error, we affirm.

"Not unlike the State Board and the superior court, this Court as an appellate body applies the 'any evidence' standard of review to the record supporting the initial decision of the Local Board." (Citations omitted.) *Chattooga County Bd. of Ed. v.*

*Searels*, 302 Ga. App. 731, 732 (691 SE2d 629) (2010); OCGA § 20-2-1160 (e); *Terry v. Houston County Bd. of Ed.*, 178 Ga. App. 296, 297 (342 SE2d 774) (1986) (accord)." Courts are reluctant to substitute their judgment for that of a school board where its exercise of judgment does not violate the law. We presume that the actions of the board are not arbitrary and capricious, but are reasonable unless there is clear evidence to the contrary." (Citation omitted.) *Brawner v. Marietta City Bd. of Ed.*, 285 Ga. App. 10, 15 (646 SE2d 89) (2007); see also *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. 339, 340 (599 SE2d 495) (2004) (accord). Our review is deferential because

> [s]tates and local authorities have a compelling, legitimate interest and broad discretion in the management of school affairs. Moreover, teachers and principals are considered professionals whose services are affected with the public interest. It follows that state and local authorities have a legitimate interest in securing the employ only of those fit to serve the public interest.

(Citation and punctuation omitted.) *Terry v. Houston County Bd. of Ed.*, 178 Ga. App. at 297.

The record contains the following relevant facts. King was a school teacher employed by the Worth County school system during the 2010-2011 school year. Because he had failed to renew a certificate required for his continued teaching at the

2

high school level, the school system transferred King to the Worth County Middle School to monitor the "in-school suspension" ("ISS") classroom for the 2010-2011 school year. An ISS teacher does not instruct students; rather, the ISS teacher monitors students sent into the detention program to make sure that they are completing the course work assigned by their classroom teachers.

In April 2011, the superintendent of the Worth County schools advised King that the school system would not be renewing his contract. After King requested a hearing, the superintendent sent him a letter detailing the reasons for the non-renewal and listing 39 potential witnesses against him. The letter alleged that he was subject to dismissal under Georgia's Fair Dismissal Act,[1] OCGA § 20-2-940 et seq., based

---

[1] Under the Act,

certain professional employees of a school district are afforded special procedural rights, commonly referred to as "tenure rights," when the school district decides not to renew their annual employment contract for a subsequent school year. These procedural rights include the right, upon timely written request by the school employee, to receive written notice of the reasons for the nonrenewal, and the right to a hearing before the local board of education to contest those reasons. OCGA §§ 20-2-940 (b), (e); 20-2-942 (b) (2). The written notice received by the school employee also must contain specific information informing the employee of his or her procedural rights. OCGA § 20-2-942 (b) (2).

3

upon allegations of insubordination, incompetence, willful neglect of duties, and a physical altercation with a student, all of which the superintendent alleged occurred during the 2010-2011 school year.[2] The letter further asserted that, "[a]lthough now exacerbated, [King has] had these type problems for the past eight years," and that he has received numerous letters of correction, two reprimand letters, and several professional development plans.

After a hearing, the local school board found that King had been, during his 2010-2011 contract year, insubordinate and incompetent, and that he had willfully neglected his duties to an extent that constituted good and sufficient cause to justify the non-renewal of his contract. The record evidence shows that, during the 2010-

---

(Footnote omitted.) *Patrick v. Huff*, 296 Ga. App. 343, 345 (1) (674 SE2d 398) (2009).

[2] OCGA § 20-2-940 (a) sets forth eight grounds upon which the contract of employment of a teacher, administrator, or other employee having a contract for a definite term may be terminated by a local board of education. These eight grounds, in summary, are:

> (1) Incompetency; (2) Insubordination; (3) Willful neglect of duties; (4) Immorality; (5) Inciting, encouraging, or counseling students to violate any valid state law, municipal ordinance, or policy or rule of the local board of education; (6) To reduce staff due to loss of students or cancellation of programs; (7) Failure to secure and maintain necessary educational training; or (8) Any other good and sufficient cause.

2011 school year, King had disregarded school policies and ISS class protocols[3] and had engaged students in "busy work" instead of ensuring that they had completed their prepared lessons. The record supports the board's finding that King had disregarded school policy by failing to properly monitor his students, and the record shows that he had been tardy to the classroom on several occasions, that he had left his classroom unattended repeatedly, and that he had allowed his students to roam the school grounds unsupervised. The record shows that King disregarded school policy by failing timely to conduct and to report roll calls that were necessary to determine if students were in the classroom. The record also shows that King did little to assist the students in completing their lessons, often allowing them to sleep or to play in what was described as a "disorderly" classroom. King also admitted that, on September 17, 2010, he grabbed a female student's shirt collar in an angry reaction to her bringing a cookie to class and that he was formally reprimanded for that act.

During the school year, the principal, administrators, and teachers wrote to or met with King on a number of occasions to discuss these problems, to make suggestions, or to prepare professional development or remediation plans for him.

---

[3] The record shows that King had been provided a copy of the school handbook, had been advised of school policy and ISS class protocols, and had attended teacher work days to prepare for monitoring the class.

The principal asked another ISS teacher and a school psychologist to help King develop strategies for managing his class and for satisfying the school's policies and protocols. Despite these efforts, King's problems persisted. Moreover, King was occasionally rude, disrespectful, or belligerent to his co-workers and the principal. The record shows that King failed his February and March 2011 teacher evaluations, rarely meeting expectations and usually falling far short of them.

Finally, the board considered evidence showing that King's problems managing the ISS students were unique to him, rather than a problem with the design of the ISS class, and that King had a history of poor performance as a teacher. For example, the principal of the school where King was previously employed testified that he had had "constant problems" with King over a six-year period, including his tardiness, his failure to follow school protocol, and his inability to handle even minor disciplinary problems involving students. King's conduct had, over the years, resulted in a number of reprimand letters.

Based on the above evidence, the local school board affirmed the school system's decision not to renew King's teaching contract. King appealed the decision to the State Board of Education, which reversed. The State Board concluded that the local board had erred by considering evidence of incidents – performance evaluations,

letters of reprimand, and professional development plans – from previous contract years. The State Board concluded that the local board's consideration of these incidents was improper because it had not received a "limiting instruction" explaining that it could only consider the prior incidents for the sole purpose of establishing a "course of conduct" and because the local board gave "equal weight" to the prior incidents in reaching its decision. The local board appealed the State Board's decision to the superior court, which reversed, finding that there was sufficient evidence to support the local board's decision.[4] In its order, the superior court stated that, because evidence of incidents from prior contract years was admissible, the weight to be given such evidence was a matter that fell within the discretion of the local board. The court also disagreed with the State Board's finding as to the purposes for which the local board considered such evidence, stating that "the language used by the local board

_____

[4] Pursuant to OCGA § 20-2-1160 (c), any party aggrieved by the decision of the State Board may appeal to the superior court of the county wherein the local board is situated. Further, subsection (e) states that "[n]either the state board nor the superior court shall consider any question in matters before the local board nor consider the matter de novo, and the review by the state board or the superior court shall be confined to the record." Thus, when reviewing decisions of a local board, both the State Board and superior court sit as appellate bodies applying an "any evidence" rule to the facts of the case. *Ransum v. Chattooga County Bd. of Ed.*, 144 Ga. App. 783, 785 (5) (242 SE2d 374) (1978).

7

indicates that it considered the evidence as evidence of course of conduct or pattern of behavior[.]" King appealed from this order.

1. King contends that the local school board erred in not renewing his teaching contract because it considered evidence concerning conduct which occurred prior to the issuance of his 2010-2011 teaching contract. Although the record shows that the local school board did, indeed, consider evidence of such conduct, the evidence was properly admitted under the circumstances.

In *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. at 345-346, we noted that the State Board, in interpreting the Fair Dismissal Act, had concluded that "[e]vidence of incidents that occurred before a contract renewal can be presented for the purpose of establishing a course of conduct, but such incidents cannot be used to recommend against renewal in a subsequent year." (citations and punctuation omitted.)[5] The record demonstrates that the local board abided by this rule.

---

[5] This evidentiary rule derives from a case styled *Peterson v. Brooks County Bd. of Ed.*, (State Board of Education; Case No. 1990-29; decided December 13, 1990), rev'd on other grounds *Brooks County Bd. of Ed. v. Peterson* (Superior Court of Brooks County; Civil Action No. 91-OCGA §-43; decided August 2, 1991). As we explained in *Moulder*, the State Board had concluded "that incidents that occur before a contract renewal can be presented for the purpose of establishing a course of conduct, so that the previous incidents could be presented against [the teacher] if termination proceedings are initiated based on any subsequent incidents of misconduct by [him or] her." *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. at

8

In this case, at the beginning of the hearing, the attorney for the superintendent stated that he was not offering evidence from past contract years as the basis for not renewing King's teaching contract, but, rather, to show that King had a "continuing problem" that needed to be placed in its larger context. Indeed, the letter notifying King of the grounds for non-renewal set forth specific incidents from the 2010-2011 contract year only. The notice, however, went on to inform King that he had "had these type problems for the past eight years." Of the nine witnesses who testified against King, only two (a principal and an assistant principal) offered evidence that King had been reprimanded in the past for similar behavior. Further, the local board's decision not to renew King's contract was based upon and supported by evidence of incidents that occurred during the 2010-2011 contract year. Only one paragraph at the end of the board's seven-page order is devoted to conduct that occurred prior to the contract renewal, and the local board prefaced that discussion with the statement that "[t]hese problems are not new to Mr. King."

Although there is no "limiting instruction" in the record concerning the course-of-conduct evidence, it is not necessary for the local board or the parties to invoke such talismanic language. For purposes of appellate review, what matters is this: The

343.

9

local board's decision must be supported by some evidence that the teacher, principal, or other employee having a contract for a definite term acted in a manner that would authorize dismissal under the provisions of the Fair Dismissal Act, as alleged in the required notice, during the current contract term. See *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. at 345-346. Any evidence from a previous contract term is admissible if it is relevant to show that the violation which was alleged to have occurred during the current term was part of a course or a pattern of actionable conduct. See id. As we explained above, the weight that the local board assigns to that course-of-conduct evidence is within the exercise of its discretion. It is not the function of this Court, nor of lower appellate tribunals, to substitute their judgment for that of the local school board where the exercise of that discretion does not violate the law. *Brawner v. Marietta City Bd. of Educ.*, 285 Ga. App. at 15; see also *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. at 340 (accord). Accordingly, given that the record evidence satisfies these criteria, we affirm the decision of the local board.

2. King also contends the school board's notice to him of the grounds for the non-renewal of his contract was insufficient. We disagree.

OCGA § 20-2-940 (b) provides, in relevant part, that, before a "teacher, administrator, or other employee having a contract of employment for a definite term" may be discharged,

> written notice of the charges shall be given at least ten days before the date set for hearing and shall state: (1) The cause or causes for his or her discharge, suspension, or demotion in sufficient detail to enable him or her fairly to show any error that may exist therein; [and] (2) The names of the known witnesses and a concise summary of the evidence to be used against him or her.

The notice, which King was given a month in advance of the scheduled hearing, advised him of the specific grounds for the non-renewal of his contract (insubordination, willful neglect of duties, incompetency, and good and sufficient cause), a detailed summary of the numerous complaints against him, as well as the names of the witnesses who might be called to testify against him regarding those complaints.[6] The notice advised King that, in addition to witness testimony, certain

---

[6] For example, King was informed:

You have on numerous occasions left your class unattended and continued to do so on occasions after having been instructed by your principal and other administrators not to do so. You have used inappropriate discipline on your students on numerous occasions. . . . You have been instructed not to ask other teachers to monitor your

11

documents, like letters of reprimand and professional development plans, might be offered as evidence. Moreover, the notice highlighted several specific incidents from the 2010-2011 contract year that might be offered as evidence in support of the grounds for non-renewal.[7] The notice also informed King that he had "these type problems for the past eight years" as evidenced by "numerous letters of correction and two reprimand letters as well as several professional development plans prepared for you." We note that King never asked for a more definite statement of the grounds for the non-renewal of his contract or for a continuance, that he thoroughly cross-

---

classroom nor ask the school police officer to do so, but you have nevertheless done so. . . . You have failed to follow protocol with respect to the collection and return of teacher assignments notwithstanding numerous directions from your principal and school administrators.

[7] For example, King was informed:

On September 13, 2010, a student walked out of your classroom on three separate occasions. On or about September 17, 2010, you had a physical altercation with your student . . . wherein you ended up grabbing the front of her shirt in an argument about a cookie. On or about November 18, 2010, there was a substantial problem about your students throwing markers and other objects around the classroom during class.

examined each of the witnesses against him, and that he testified in his own defense and submitted 40 exhibits in support of his case.

The notice given complied with OCGA § 20-2-942 (b). It was timely and sufficient to allow King to show any error that may have existed in the grounds set forth for the non-renewal of his contract. This claim of error is without merit.

*Judgment affirmed. Phipps, C. J., and Branch, J., concur*.

13