**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MERCIER,**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 11, 2016**

# In the Court of Appeals of Georgia

A15A2296. DUKES-WALTON v. ATLANTA INDEPENDENT
    SCHOOL SYSTEM.

ELLINGTON, Presiding Judge.

Selena Dukes-Walton, following our grant of her application for discretionary review, appeals from the order of the Superior Court of Fulton County affirming the decision of the Georgia Board of Education upholding the termination of Dukes-Walton's employment contract by the Atlanta Board of Education ("Local Board"). Dukes-Walton contends that the superior court erred because the evidence was insufficient to support the charges against her. She also contends that the superior court erred because the decision of the Local Board was arbitrary and capricious, based on inadmissible evidence, and violated her right to due process. We affirm for the reasons set forth below.

The record shows that by letter dated March 29, 2012, the superintendent of the Atlanta Independent School System ("APS") notified Dukes-Walton under the Fair Dismissal Act of Georgia, OCGA § 20-2-940 et seq., that he was recommending that the Local Board terminate her employment contract on the statutory grounds of willful neglect of duties, immorality, and other good and sufficient cause, as well as other grounds.[1] APS charged that Dukes-Walton failed her duties as principal and knew or should have known about testing improprieties during the administration of the Spring 2009 Criterion Referenced Competency Test ("CRCT"), and that, among

---

[1] The eight grounds upon which the contract of employment of a teacher, principal, or other employee having a contract for a definite term may be terminated by a local board of education under OCGA § 20-2-940 (a) are:

> (1) Incompetency; (2) Insubordination; (3) Willful neglect of duties; (4) Immorality; (5) Inciting, encouraging, or counseling students to violate any valid state law, municipal ordinance, or policy or rule of the local board of education; (6) To reduce staff due to loss of students or cancellation of programs . . . .; (7) Failure to secure and maintain necessary educational training; or (8) Any other good and sufficient cause.

OCGA § 20-2-940 (b) "requires that the teacher, principal, or other employee under contract for a definite term be given written notice of the charges, along with certain information to enable preparation of a defense. Subsection (e) requires a hearing before the local board or a board-designated tribunal. Under subsection (f), appeals from the decision of the local board may be taken to the State Board in accordance with OCGA § 20-2-1160." *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. 339, 340 (599 SE2d 495) (2004).

other things, her actions and inactions resulted in the misrepresentation of the evaluation of her students to the Georgia Department of Education as to the results of the 2009 CRCT. A hearing on the charges was held before a tribunal, which, by a preponderance of the evidence, found the charged violations of immorality and other good and sufficient cause. The tribunal did not find that Dukes-Walton committed the charged violation of willful neglect of duties. The tribunal affirmed the recommendation by the superintendent that Dukes-Walton's employment contract be terminated.

The Local Board adopted the tribunal's findings of fact and terminated Dukes-Walton's employment. The Georgia Board of Education ("State Board") affirmed that decision on appeal. Dukes-Walton appealed the decision of the State Board to the superior court, which affirmed.

The superior court and the State Board, in reviewing a decision of a local board, act as appellate bodies applying an "any evidence" rule to the facts of the case. See *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. 339, 340 (559 SE2d 495) (2004). "[T]he superior court should not interfere with a local board's administration of its schools unless the board has grossly abused its discretion or acted arbitrarily or contrary to law." (Footnote omitted.) *Clinch County Bd. of Ed. v. Hinson*, 247 Ga.

3

App. 33, 36 (1) (543 SE2d 91) (2000). Like the State Board and the superior court, this Court "applies the 'any evidence' standard of review to the record supporting the initial decision of [a] Local Board." (Citations omitted.) *Chattooga County Bd. of Ed. v. Searels*, 302 Ga. App. 731, 732 (691 SE2d 629) (2010). We presume, absent clear evidence to the contrary, that the acts of a local board are not arbitrary and capricious. See *King v. Worth County Bd. of Ed.*, 324 Ga. App. 208 (749 SE2d 791) (2013).

Viewed in the light most favorable to the Local Board's decision,[2] the evidence shows that Dukes-Walton was the principal of Slater Elementary School during the administration of the 2009 CRCT. The CRCT is a standardized test given to Georgia students in the first through the eighth grades. The test is designed to measure how well students at each grade level had acquired knowledge and skills within the state's curriculum. The Governor's Office of Student Achievement ("GOSA") conducted a state-wide analysis of erasures on the answer sheets used in the 2009 CRCT and "flagged" those classrooms in which the number of answers changed from wrong to right was unusually high. The GOSA report flagged 30.3 percent of the classes at Slater Elementary.

---

[2] See *Chattooga County Bd. of Ed. v. Searels*, 302 Ga. App. at 732.

4

At the tribunal hearing, APS offered expert testimony from an applied statistician, Mary Beth Walker, who had reviewed the statistical techniques used in GOSA's erasure report. Walker testified that the GOSA report used a conservative measure that flagged only those classrooms in which the chance that the number of wrong-to-right erasures occurred without adult intervention was 1 in 1000. Walker opined that there was no credible explanation other than that cheating occurred at Slater Elementary.

APS also offered direct evidence of cheating. The parties stipulated that Ellen Grant, who taught at Slater Elementary during the 2008-2009 school year, cheated on 2009 CRCT by allowing students to correct their answers the following day and by changing student answers herself. Nettie Walker, also a teacher at Slater Elementary during the 2008-2009 school year, testified that she erased wrong answers and replaced them with correct answers. According to Walker, she cheated on the CRCT because she was under a lot of pressure.

A third teacher, Katrina Coleman, testified that, prior to the administration of the 2009 CRCT, she was given written targets as to how many students in her classroom had to pass the test. She was given these targets at the beginning of the semester, and later in an individual conference with Dukes-Walton. The same sheet

5

of paper containing her classroom targets was also included with the CRCT test booklets, answer documents, and other testing materials. At that time, Coleman testified, there was nothing that she could legitimately do to ensure that her class met those goals. According to Coleman, Dukes-Walton acted "very like a dictator" and created a hostile work environment at Slater Elementary, and she did not feel that she could have approached Dukes-Walton with any concerns regarding the 2009 CRCT.

APS also presented the testimony of former Slater Elementary teacher Schajuan Jones. Jones testified that teachers were told at faculty meetings how many students in each grade level could fail the 2009 CRCT. Either the Friday before, or on the morning of, the exam, Dukes-Walton called the fifth-grade teachers into the hallway, and she said that Jones "had one person that could fail, [another fifth grade teacher] had one person to fail, [a third fifth grade teacher] had one person to fail and that [a fourth fifth grade teacher] couldn't have any to fail." Jones testified that, other than cheating, there was nothing she could have done the Friday before, or on the morning of, the CRCT to affect the outcome of the test. Jones also testified that, immediately after the administration of the CRCT in 2007, she saw Grant sitting at a table in the media center erasing whole sections of answer sheets and then "bubbling in" the answers. Jones immediately reported the incident to Vanessa Jackson, who was the

6

testing coordinator at Slater Elementary and the person designated for receiving reports of irregularities.

Jackson apparently did not report the 2007 incident to Dukes-Walton, who testified that she was not aware of any irregularities or cheating on the CRCT before the 2008-2009 school year. The tribunal found Dukes-Walton's testimony to be credible insofar as it concluded that she did not have actual knowledge of cheating. As Dukes-Walton acknowledged, however, as the principal she had the ultimate responsibility for testing activities at her school and was responsible for ensuring the proper environment for administration of the CRCT, including an atmosphere where teachers knew that cheating would not be tolerated.

The tribunal found that, although Dukes-Walton did not have actual knowledge of cheating at Slater Elementary, she should have had such knowledge. Further, it found that she created an environment in which cheating could occur and in which teachers felt they could not approach her to report cheating violations. Dukes-Walton, the tribunal concluded, "create[d] an environment that allowed teachers to violate testing rules and procedures in order to increase student scores on the 2009 CRCT."

1. Dukes-Walton contends that the superior court erred in affirming the decision of the State Board because the State Board improperly found evidentiary and

precedential support for the charge of "any other good and sufficient cause." Dukes-Walton argues that APS failed to show that she engaged in intentional misconduct which had an adverse impact on her ability to be effective. She contends that there was a lack of evidence that she knew about the cheating, a lack of evidence that the teachers' decisions to cheat were attributable to the pressure or climate Dukes-Walton created at the school, and, given that the number of wrong to right erasures on the CRCT dropped markedly in 2010, when she remained the principal at Slater Elementary, there was a lack of evidence that her effectiveness as an educator had been adversely impacted.

"Any other good and sufficient cause" is one of the grounds under the Fair Dismissal Act pursuant to which a teacher, administrator, or other employee having a contract for a definite term may be terminated. See OCGA § 20-2-940 (8). The meaning of "any other good and sufficient cause," for purposes of the Fair Dismissal Act, has not been expressly defined in our appellate decisions, although we have nevertheless found evidence sufficient to support a local board's decision to terminate an educator's contract on this ground.[3]

---

[3] See *Chattooga County Bd. of Ed. v. Searels*, 302 Ga. App. at 734-735 (1) (b) (where a teacher's oral statements to her students weakened her credibility and effectiveness as an educator, sufficient evidence supported the local board's finding

Here, the State Board found that "good and sufficient cause" must be construed consistently with the other grounds for discipline set forth in the Fair Dismissal Act, and, accordingly, requires more than a showing of mere negligence. See *Beal-Parker v. DeKalb County Bd. of Ed.*, Case No. 2008-17 (Ga. SBE, Feb. 2008). Further, "any other good and sufficient cause," the State Board concluded, "is limited to actions taken (or not taken) by an employee that adversely impact on the employee's ability to be effective," and "contemplates some improper action on the part of the employee[.]" See *Cooper v. Atlanta Bd. of Ed.*, Case No. 2005-08 (Ga. SBE, Nov. 10, 2004). "[T]he State Board is the governmental agency charged by law with enforcement of the Fair Dismissal Act and . . . its interpretation of the statute, though

---

of "good and sufficient cause" to terminate the teacher's employment contract); *Clinch County Bd. of Ed. v. Hinson*, 247 Ga. App. 33, 36 (d) (1) (543 SE2d 91) (2000) (where a teacher videotaped a student locker room the evidence authorized the local board to find "good and sufficient cause" for his termination); *Rabon v. Bryan County Bd. of Ed*, 173 Ga. App. 507, 508-509 (2) (326 SE2d 577) (1985) (where a principal intimidated certain teachers by making remarks with sexual connotations, the evidence authorized the local board to find good and sufficient cause to terminate his employment). See also *Professional Standards Commission v. Alberson*, 273 Ga. App. 1, 7-11 (2) (614 SE2d 132) (2005) (finding Professional Standards Commission ethics rule authorizing teacher discipline for "any other good and sufficient cause" in the Commission's discretion not unconstitutionally vague; and recognizing "a school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process") (citation and punctuation omitted).

9

not conclusive, is entitled to great weight." (Footnote omitted.) *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. at 340.

Applying the foregoing standard, which we find to be an authorized interpretation of the Fair Dismissal Act, there was evidence from which the Local Board could sustain the charge that Dukes-Walton's conduct authorized the termination of her contract for other good and sufficient cause. Evidence showed that Dukes-Walton personally told teachers in fifth grade hallway, on either the morning of the test administration, or the Friday before, how many students could fail the test. Similar information as to testing goals was distributed to at least one teacher within the testing materials themselves. At these times, the Local Board could conclude, there was nothing that those teachers could legitimately do to affect the outcome of the test. Thus, even if Dukes-Walton did not actually direct teachers to cheat on the 2009 CRCT, a trier of fact could conclude that she was responsible for creating an environment in which cheating was implicitly encouraged. It can also be reasonably inferred from the evidence that her actions in pressuring teachers to achieve goals that could not then be legitimately achieved was more than negligent, but intentional, and weakened her credibility and effectiveness as a principal. And, if circumstantial, a trier of fact could also conclude that Dukes-Walton's conduct contributed to the

10

misrepresentation of her student's academic abilities on the reported results of the 2009 CRCT. Accordingly, there was at least some evidence from which the Local Board could conclude that Dukes-Walton's contract be terminated for other good and sufficient cause.

2. Dukes-Walton also contends that the superior court erred in affirming the decision of the State Board as there was a lack of evidence to support the charge of immorality. See OCGA § 20-2-940 (4). Even assuming, without deciding, that Dukes-Waltons's actions did not rise to the level of immorality, the evidence was nevertheless sufficient to support the decision of the Local Board to terminate her employment under the Fair Dismissal Act, as we found in Division 1, supra, and the superior court did not err in affirming the decision of the State Board.

3. Dukes-Walton contends that the superior court erred in affirming the State Board's decision because the hearing officer violated her right to due process by permitting APS to amend the charges against her in the middle of the hearing before the tribunal. Dukes-Walton contends that, by permitting the amendment, the hearing officer improperly allowed APS to introduce evidence which would otherwise have been inadmissible because it was outside the scope of the charge letter.

The record shows that the tribunal convened Dukes-Walton's hearing on May 7, 2012, and recessed that day with APS having yet to rest its case. The hearing was scheduled to reconvene on May 22, 2012. On May 10, 2012, the Professional Standards Commission ("PSC")[4] voted to recommend revocation of Dukes-Walton's educator's certificate. APS moved on May 16, 2012, to introduce evidence regarding the PSC's decision. The hearing officer determined that the PSC's decision to revoke Dukes-Walton's certificate in May 2012 could not be offered as evidentiary support for APS's decision to terminate her employment under the previously issued charge letter, as amended. But, he ruled, evidence of the PSC's decision would be admissible if APS issued an amended charge letter and provided Dukes-Walton with at least 10 days' notice of the rescheduled hearing date. See OCGA § 20-2-940 (b) ("Before the discharge or suspension of a teacher, administrator, or other employee having a contract of employment for a definite term, written notice of the charges shall be given at least ten days before the date set for hearing[.]" The notice must, among other things, state "[t]he cause or causes for [the employee's] discharge, suspension,

---

[4] The PSC is charged with creating and implementing "standards and procedures for certifying educational personnel as qualified for a certificate to practice in the public schools of Georgia." OCGA § 20-2-984.

12

or demotion in sufficient detail to enable him or her fairly to show any error that may exist therein.").

APS opted to issue an amended charge letter. The amended letter, dated May 25, 2012, stated that the PSC's recommendation to revoke Dukes-Walton's educator's certificate "further impacted" APS's loss of confidence in her ability to discharge her duties as an educator. The amended charge letter notified Dukes-Walton that it intended to introduce evidence of that decision and that the hearing would reconvene on June 11, 2012. When the hearing recommenced on that date, the hearing officer admitted evidence of the PSC decision.

Although OCGA § 20-2-940 does not precisely address the instant situation, it is undisputed that APS provided Dukes-Walton with at least 10 days' advance notice that it would be offering evidence of the PSC decision, and she had an opportunity to defend and be heard consistent with the requirements of the statute. Dukes-Walton has not shown that she was denied due process by APS's amendment of its charge letter under these circumstances. See *Boatright v. Glynn County School Dist.*, 315 Ga. App. 468, 470 (1) (726 SE2d 591) (2012) (due process in public

13

employment cases requires that the state must give notice and an opportunity to be heard to a person deprived of a property interest).[5]

4. Dukes-Walton contends that the Local Board's decision, as affirmed by the State Board and the superior court, was arbitrary and capricious because the tribunal's findings, which the Local Board adopted, were based on erroneous evidentiary rulings by the hearing officer.[6] Specifically, she argues that the hearing officer erred in admitting the PSC's decision, which she contends was irrelevant and prejudicial, and in excluding "comparator evidence," that is, evidence that APS decided to terminate her while retaining similarly situated principals.[7]

---

[5] Cf. *Whisenant v. Douglas County Bd. of Ed.*, Case No. 1997-52 (Ga. SBE, March 12, 1998) (the appellant was denied due process by admission of evidence "beyond the scope of the charge letter, thus denying [him] the opportunity to properly defend against such charges").

[6] OCGA § 20-2-940 (e) (4) provides that "the parties by agreement may stipulate that some disinterested member of the State Bar of Georgia shall decide all questions of evidence and other legal issues arising before the local board or tribunal." The hearing transcript shows that the proceedings were presided over by a disinterested member of State Bar of Georgia who, the parties agreed, would rule on questions of law or evidence that might arise during the course of the hearing.

[7] Under OCGA § 20-2-940 (e) (4), except as otherwise provided therein, at the hearing "the same rules governing nonjury trials in the superior court shall prevail." The State Board has applied the Georgia Rules of Evidence in reviewing evidentiary rulings at a tribunal hearing. See, e.g., *Beal-Parker v. DeKalb County Bd. of Ed.*, Case No. 2008-17 (Ga. SBE, February _, 2008); *Duncan v. Clayton County Bd. of Ed.*,

14

Assuming without deciding that the hearing officer erred in admitting the PSC decision,[8] we cannot conclude, as Dukes-Walton asserts, that the decision of the Local Board was consequently arbitrary and capricious. The tribunal's findings, which were adopted by the Local Board, contained numerous specific findings of fact regarding Dukes-Walton's professional failures, but the tribunal notably did not identify the PSC decision as support for its findings or even reference the PSC decision. The admissible evidence supported the Local Board's decision to terminate Dukes-Walton's employment under the statutory grounds, as we found in Division 1, supra. Dukes-Walton was not harmed by the improper admission of the PSC recommendation.

With regard to the comparator evidence that the hearing officer excluded, the record shows that Dukes-Walton intended to introduce the document to show that, after GOSA issued its report flagging classrooms for high rates of wrong-to-right

Case No. 1996-10 (Ga. SBE, July 11, 1996).

[8] See *Adams v. Fulton County Bd. of Ed.*, Case No. 2010-91 (Ga. SBE, October _, 2010) (evidence before the local board included a PSC decision to suspend the teacher's certificate); *Bullock v. Fulton County Bd. of Ed.*, Case No. 2010-92 (Ga. SBE, October _, 2010) (same); see also *Wyatt v. Atlanta Independent School System*, Case No. 2013-02 (Ga. SBE, November 14, 2012) (citing *Adams* and *Bullock* for the proposition that the State Board had upheld the decision of a local board where there was no objection to the local board's reliance on a PSC decision).

erasures on the 2009 CRCT, APS did not place on administrative leave several principals whose schools had a high percentage of classrooms flagged for wrong-to-right erasures. Dukes-Walton argues that APS's decision to terminate her employment was based on the GOSA report and not on her individual conduct. She maintains that disparate treatment by APS of principals who were similarly situated in terms of the GOSA report was relevant to show that APS acted arbitrarily in seeking to terminate her. We conclude, however, that Dukes-Walton's argument that APS's decision to terminate her employment was based solely on the GOSA report is not supported by the record. To the contrary, the charge letter alleges, and the evidence showed, that APS lost confidence in her ability to carry out her professional duties based on her individual misconduct. The hearing officer did not abuse his discretion in excluding the proffered "comparator" evidence. See *Brown v. DeKalb County Bd. of Ed.*, Case No. 2013-37 (Ga. SBE, May 9, 2013) (comparator evidence of misconduct by other employees who received different discipline was not relevant and was properly excluded).

*Judgment affirmed. Dillard and Mercier, JJ., concur.*