## FIFTH DIVISION
## MCFADDEN, P. J.,
## PIPKIN, J., and SENIOR APPELLATE JUDGE PHIPPS

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 5, 2021**

# In the Court of Appeals of Georgia

A21A0753. RABUN COUNTY BOARD OF EDUCATION v. RANDEL.

PHIPPS, Senior Appellate Judge.

Following our grant of its application for discretionary review, the Rabun County Board of Education (the "Local Board") appeals from a superior court order reversing the decision of the Georgia Board of Education (the "State Board") upholding the termination of appellee Bronwyn Randel from her position as a high school teacher. The Local Board contends that the superior court erred when it (a) concluded that Randel was entitled to have a tribunal appointed to hear her case in place of the Local Board and (b) on that basis, reversed the decision not to renew Randel's teaching contract. For the reasons that follow, we agree, reverse the superior court's decision, and remand for further proceedings.

The record shows that, in May 2018, the Local Board's superintendent notified Randel that her teaching contract would not be renewed at the end of the school year. Pursuant to the Georgia Fair Dismissal Act, OCGA § 20-2-940 et seq., counsel for the Local Board subsequently identified the reasons for nonrenewal as insubordination, incompetence, willful neglect of duty, and "other good and sufficient cause."[1] Randel requested a hearing under OCGA § 20-2-940 and, on November 12, 2018 – one day before the scheduled hearing – sought the appointment of a tribunal to hear the matter in place of the Local Board, pursuant to OCGA § 20-2-940 (e) (1).[2] She contended that due process required the appointment of a tribunal because she had filed a charge of discrimination against the Local Board with the U. S. Equal Employment Opportunity Commission ("EEOC") in April 2018, as a result of which, she claimed,

---

[1] The grounds upon which an employee having a contract for a definite term may be terminated by a local board of education under OCGA § 20-2-940 (a) are:

> (1) Incompetency; (2) Insubordination; (3) Willful neglect of duties; (4) Immorality; (5) Inciting, encouraging, or counseling students to violate any valid state law, municipal ordinance, or policy or rule of the local board of education; (6) To reduce staff due to loss of students or cancellation of programs . . . ; (7) Failure to secure and maintain necessary educational training; or (8) Any other good and sufficient cause.

[2] OCGA § 20-2-940 (e) (1) requires a hearing before the local board or a board-designated tribunal.

2

the Local Board could not be impartial in these proceedings.[3] A hearing officer – who presided over the Local Board hearing and appears not to have been a member of the Local Board[4] – denied Randel's request for the appointment of a tribunal, primarily on the ground that the Local Board retains the ultimate decision-making authority as to termination.

Following the hearing, the Local Board affirmed the superintendent's recommendation that Randel's employment contract not be renewed, and the State Board affirmed that decision on appeal. Randel appealed the State Board's decision to the superior court, which reversed on the ground that the Local Board violated Randel's due process right to an impartial arbiter by failing to appoint a tribunal to hear her case. This appeal followed.

---

[3] Randel amended her EEOC charge in May and June 2018. Although she does not repeat this contention on appeal, Randel asserted in her request for a tribunal that its appointment "would alleviate the bias issue *so long as the [Local Board] accepts the determinations of the tribunal*." (Emphasis supplied.) Under the applicable statutory scheme, however, an appointed tribunal is authorized only "to conduct the hearing and submit its findings and recommendations to the local board for *its decision* thereon." OCGA § 20-2-940 (e) (1) (emphasis supplied).

[4] See OCGA § 20-2-940 (e) (4) ("[T]he parties by agreement may stipulate that some disinterested member of the State Bar of Georgia shall decide all questions of evidence and other legal issues arising before the local board or tribunal.").

3

1. Under the Fair Dismissal Act, a hearing to address the proposed termination of a teacher "*shall* be conducted before the local board, *or* the local board *may* designate a tribunal to consist of not less than three nor more than five impartial persons possessing academic expertise to conduct the hearing and submit its findings and recommendations to the local board for its decision thereon." OCGA § 20-2-940 (e) (1) (emphases supplied). The Local Board contends on appeal that the superior court misconstrued this statute by ruling that due process requires a tribunal to be appointed to hear this matter in place of the Local Board. We agree.

This appeal presents a question of law, which we review de novo. See *In the Interest of P. N.*, 291 Ga. App. 512, 512 (662 SE2d 287) (2008) (addressing claims that the trial court's rulings violated the appellants' due process and equal protection rights). In proceedings under the Fair Dismissal Act, "[t]he superior court should not interfere with a local board's administration of its schools unless the board has grossly abused its discretion or acted arbitrarily or contrary to law. . . . We presume, absent clear evidence to the contrary, that the acts of a local board are not arbitrary and capricious." *Dukes-Walton v. Atlanta Independent School System*, 336 Ga. App. 175, 176 (784 SE2d 37) (2016) (citations and punctuation omitted).

4

Similarly, "[t]he State Board is the governmental agency charged by law with enforcement of the Fair Dismissal Act and its interpretation of the statute, though not conclusive, is entitled to great weight." *Dukes-Walton*, 336 Ga. App. at 179 (1) (citation and punctuation omitted); accord *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. 339, 340 (599 SE2d 495) (2004). Thus, "[a]lthough [an] appellate court is not bound to blindly follow an agency's interpretation, we defer to an agency's interpretation when it reflects the meaning of the statute and comports with legislative intent." *Moulder*, 267 Ga. App. at 341 (citation and punctuation omitted).

For proceedings under the Fair Dismissal Act to comply with due process, the employee must be afforded notice, a "meaningful opportunity to be heard," and "the right to be heard by a tribunal which possesses some academic expertise and an apparent impartiality toward the charges leveled against" the employee. *Holley v. Seminole County School Dist.*, 755 F2d 1492, 1497 (II) (A) (11th Cir. 1985).[5] As to the latter of these requirements, due process may require an individual board

[5] The due process clause under our state constitution provides the same procedural rights in public employment cases as the federal due process clause. *Boatright v. Glynn County School Dist.*, 315 Ga. App. 468, 470 (1) (726 SE2d 591) (2012). And while Eleventh Circuit decisions construing federal law are not binding on this Court, they are persuasive. See *McKeen v. Fed. Deposit Ins. Corp.*, 274 Ga. 46, 48, n. 1 (549 SE2d 104) (2001).

5

member's recusal from a school board employment proceeding based on bias when, for example, the member has been *personally involved* in criticizing an employee's performance and seeking the employee's removal. See *Johnson v. Pulaski County Bd. of Ed.*, 231 Ga. App. 576, 578-579 (4) (499 SE2d 345) (1998).

Here, we first note that the superior court misapplied *Wright v. Monroe County Bd. of Ed.*, 148 Ga. App. 845 (253 SE2d 210) (1979), when it determined that the Code of Judicial Conduct ("CJC") applies to local boards of education sitting in a judicial capacity in nonrenewal matters. In *Wright*, we merely assumed, without deciding, that this was the case. See id. at 847. We now hold that the CJC does not per se apply to local boards, for the reasons that follow.

The CJC rule at issue here provides, in relevant part:

Judges shall disqualify themselves in any proceeding in which their *impartiality* might reasonably be questioned, or in which:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal *knowledge* of disputed evidentiary facts concerning an *impending matter* or a *pending proceeding*.

CJC Rule 2.11 (A). The plain terms of the Fair Dismissal Act, however, contemplate that initial proceedings under the Act are to be held before a local board, which, by its very nature, is likely to have some knowledge of disputed evidentiary facts in at

6

least some (if not many) of the cases brought before it. See OCGA § 20-2-940 (e). And the statute grants each local board the discretion to decide whether to appoint a tribunal to hear a matter in its place. See OCGA § 20-2-940 (e) (1). For these reasons, a wholesale application of the CJC to the proceedings at issue here is inappropriate.

Nevertheless, we agree that, as a matter of due process, the proposition embodied by CJC Rule 2.11 (A) may require the recusal of individual local board members who entertain personal or financial biases relevant to the subject matter of a proceeding.[6] See *Johnson*, 231 Ga. App. at 578-579 (4); *Holley*, 755 F2d at 1497 (II) (B). Randel has not shown that such is the case here – in fact, she has identified no record evidence indicating that any individual members of the Local Board are aware of or have any opinions regarding her EEOC charges.[7, 8]

---

[6] Our ruling in this regard is consistent with *Garrett v. Atkinson County Bd. of Ed.*, Case No. 1980-21 (Ga. SBE, Nov. 13, 1980), in which the State Board held that due process required the disqualification from a Fair Dismissal Act hearing of an individual local board member whose wife was a material witness in the case against the employee. For the reasons discussed above, however, we disapprove of the erroneous assertion in the State Board hearing officer's report in *Garrett* that this Court in *Wright*, 148 Ga. App. 845, held that the CJC applies to local boards "sitting in a judicial capacity concerning the termination of a teacher." See Case No. 1980-21, Report of Hearing Officer at 6.

[7] And even if she had, we disagree with her suggestion that any such knowledge necessarily would weigh against her in her nonrenewal proceedings, as an unfavorable decision in these proceedings is as likely as not to add support to her EEOC discrimination claim, whereas a decision by the Local Board to extend Randel's employment in the face

7

Because an appointed tribunal may only make recommendations to a local board and thus has no final decision-making authority, see OCGA § 20-2-940 (e) (1), (f), the failure to appoint an entirely new tribunal is not of constitutional magnitude, at least where – as here – there is no allegation that one or more individual board members would be required to recuse for reasons personal to such members.[9] See *Holley*, 755 F2d at 1497 (II) (B) (holding that due process was not violated where a local board's attorney served as the hearing examiner because: (i) administrative tribunals may consist of individuals who have played both investigative and adjudicatory roles; and (ii) no "actual bias" by the attorney was shown); id. at 1498

---

of the superintendent's recommendation to the contrary potentially could weigh against a finding that it had discriminated against her, even if it would not be conclusive in that regard.

[8] Randel's related passing, conclusory assertion that the Local Board necessarily "had a bias" for its superintendent's attorney in the instant proceedings because the same attorney represents the Local Board in the EEOC proceedings does not warrant discussion, as it is unsupported by citation to the record or legal authority and merely assumes that which it seeks to establish. See generally *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citations and punctuation omitted). Regardless, without more, this scenario is no different than any in which a local board decides a case presented by an attorney or firm with whom (or which) it is familiar.

[9] Notably, even actual bias, standing alone, "does not always rise to the level of a constitutional issue." *Holley*, 755 F2d at 1498 (II) (D) (citation and punctuation omitted).

(II) (C) (finding no due process violation where the local board heard the matter instead of referring it to an independent commission[10] because: (i) the former employee's claim of "political reprisal" did not distinguish his case from others in which an educator claimed that his dismissal, suspension, or demotion was retaliatory; and (ii) "[a]djudication in front of the [independent commission] or an analogous independent adjudicatory body is certainly not required by federal due process"). In so ruling, we express no opinion on whether the statute itself complies with due process in this regard, as no claim to that effect was raised or ruled on below or raised before this Court. See *Price v. Grehofsky*, 349 Ga. App. 214, 222 (2) (825 SE2d 594) (2019) ("[A]ppellate courts will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point, and the record in the present case contains no such ruling.") (citation and punctuation omitted).

---

[10] *Holley* addressed a prior version of OCGA § 20-2-940 (e) (1), under which a local board had the discretion to refer the matter for a hearing by a "Professional Practices Commission," which was an independent commission consisting of teachers, principals, local superintendents, and a representative of the Department of Education. See 755 F2d at 1498 (II) (C). In a decision addressing that version of the statute, we noted that – as is the case with the current statute – the former statute vested the power to terminate contract employees in the local board, which was "free to adopt or ignore the recommendation" of the commission. *Rabon v. Bryan County Bd. of Ed.*, 173 Ga. App. 507, 508 (1) (326 SE2d 577) (1985).

In concluding that no due process violation occurred on the facts of this case, we note that we need not decide whether a local board is vested with *absolute* discretion in deciding whether to appoint a tribunal. It suffices to say that a local board's discretion in this regard is broad enough to permit the decision not to appoint a tribunal on the specific facts presented here without running afoul of due process principles. See generally *Ferguson v. Thomas*, 430 F2d 852, 856 (5th Cir. 1970) (observing, in a case addressing the sufficiency of procedures surrounding a college professor's termination, that "the standards of procedural due process are not wooden absolutes" and that "[t]he sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved").[11] We therefore reverse the superior court's ruling that the failure to appoint a tribunal here violated Randel's due process rights.

2. Randel contends that we may affirm the superior court's decision on several alternative bases. In that regard, she maintains that the Local and State Boards' decisions against her cannot stand because the Local Board: (i) failed to provide her

---

[11] In *Bonner v. City of Prichard*, 661 F2d 1206, 1209 (II) (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit issued before the close of business on September 30, 1981. See *Brown v. State*, 303 Ga. 158, 163 (2), n. 2 (810 SE2d 145) (2018).

with adequate notice of the evidence against her; (ii) violated her rights to subpoena witnesses and documents; (iii) erroneously denied her request to continue the hearing to allow her to call two subpoenaed witnesses who left before they were called; and (iv) admitted several categories of inadmissible evidence.

We decline to address these arguments in light of: (i) the statutory scheme that vests the superior court with responsibility for the initial level of appellate review from a State Board decision, see OCGA § 20-2-1160 (c), and mandates that further appellate review beyond the superior court is limited by the discretionary appeal statute, OCGA § 5-6-35 (a) (1), (b); and (ii) the proposition that we typically will not address issues that have not been ruled on by the superior court. See generally *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (in appeals in which "there may be a variety of grounds advanced, with disputes pertinent to those grounds," judicial economy may be maximized by returning the case to the superior court "upon the appellate court's discovery that the trial court relied on an erroneous legal theory or reasoning"). On remand, the superior court should address each of

Randel's alternative arguments – to the extent it determines that each has been properly preserved – in the first instance.

*Judgment reversed and case remanded with direction. McFadden, P. J., and Pipkin, J., concur.*